[Crim. No. 7479. In Bank. Feb. 4, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WILLIAM ALVERSON, Defendant and Appellant.

Daniel J. Jaffe, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—Alverson, Stoner and Williamson were jointly charged with and tried for burglary. Five prior convictions were charged against and admitted by Alverson, and one prior was charged against and admitted by Williamson. The jury found Alverson and Stoner guilty of second degree burglary, and acquitted Williamson. Alverson alone appeals.

The charged burglary was of a radio store in Los Angeles. There is no need to recite the evidence in detail. For the purposes of this appeal all that need be stated is that at the close of the evidence the prosecution's case against Williamson was strong, and, comparatively, was weak against the two other defendants, except for the testimony of Williamson. The latter had been positively identified as the driver of the getaway car, and when stopped by the police, had fled the scene. When arrested he had given extrajudicial statements to the police which were recorded and introduced against him. In those statements, not admitted against his codefendants, he admitted driving the getaway car and fleeing the scene, but claimed that he did not know of the burglary until the other two defendants got into the car, told him that they had burglarized the radio store, and advised him to drive away. He gave as his reason for fleeing the scene when accosted by the police that he was afraid to be found with the other defendants because of his prior conviction. At the trial he took the stand in his own defense and testified to the same story, including a positive identification of the two codefendants as the perpetrators of the crime. This judicial statement was, properly, admitted, not only against Williamson, but against Alverson and Stoner as well.

As already pointed out, except for this testimony of Williamson, the case against appellant and Stoner was comparatively weak. The prosecution had been unable to produce any direct evidence of identification of these two defendants as participants in the crime. It had introduced circumstantial evidence of certain suspicious facts that tended to connect them with the crime, but this evidence was of such a charac-

ter that, while it may have sustained a conviction, such a conviction would have been doubtful. Both Stoner and appellant had taken the stand, denied any participation in the crime, and offered alibis. These alibis were supported by independent testimony.

This was the position of the case at the close of the evidence. If the jury believed Williamson's testimony identifying the two codefendants as the perpetrators of the crime, but disbelieved him, as it could well have done, as to his testimony of any knowledge of the crime prior to its commission, then Williamson would, obviously, have been an accomplice, and his testimony would have to be corroborated. But if the jury could be induced to find that Williamson had no knowledge of the crime until after it was committed, then it could find that he was not an accomplice, and his testimony alone would be sufficient to convict his two codefendants. The prosecutor was faced with a difficult dilemma. If he argued that Williamson was not to be believed as to his lack of prior knowledge of the crime, but to be believed as to his identification of his two codefendants, he would not only be making Williamson an accomplice whose testimony had to be corroborated, but he would also be faced with the instruction "That a witness false in one part of his testimony is to be distrusted in others." (Code Civ. Proc., § 2061, subd. 3.) To make such an argument might well result in the acquittal of Alverson and Stoner, and might not result in the conviction of Williamson. But if the prosecutor could induce the jury to believe all of Williamson's testimony, then, although Williamson would be acquitted, the case against the other two defendants would be unmeasurably strengthened. If the jury disbelieved all of Williamson's testimony the case against Alverson and Stoner would almost certainly collapse.

Under these circumstances the prosecutor decided to salvage what he could. He decided to ask the jury to acquit Williamson and to believe his entire story, and so, by necessary implication, to disbelieve Alverson and Stoner. He waited until his closing argument, that period in the trial referred to in *People* v. *Perez,* 58 Cal.2d 229, 245 [23 Cal. Rptr. 569, 373 P.2d 617], as "that especially critical period," and then told the jury that he found himself in a most unusual but "delightful" situation: "A man here, Mr. Williamson, has been charged along with two others, Mr. Alverson and Mr. Stoner, and quite frankly in my own mind I think Mr. Williamson is telling you the truth, and quite

frankly I do not think he is guilty of this charge.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The defendant here, Williamson, has taken the stand. He has told what I consider is a plausible, honest, forthright story. . . .

"All right, the testimony you have heard, it's up to you to determine whether, in fact, he is telling the truth; whether, in fact, he is guilty or innocent of the charge. I express to you my own opinion, I express to you what I think the evidence has shown, and I wouldn't make the statement until all of the evidence is in. . . .

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"I am beginning to sound like a defense counsel, but this is the duty of a District Attorney, of the prosecutor, not to convict innocent people, it's to convict the guilty, and I will leave it very simply, very plainly with you here."

It was, of course, quite praiseworthy for the prosecutor to tell the jury that he did not want to convict an innocent man. But in a trial in which other defendants are involved the prosecutor must be scrupulous not to affect, adversely and improperly, the rights of the other defendants. Of course, when he stated that he wanted the jury to acquit Williamson because he personally thought he was innocent, and when he stated that he would not want to convict a man he personally thought was innocent, he, necessarily, by continuing to prosecute the other two defendants, was stating that he personally believed them to be guilty.

There were other procedures available to the prosecutor by which he could have protected Williamson without adversely affecting the other two defendants. Once he became convinced of Williamson's innocence, he could have moved for a mistrial. But we agree with respondent that such a remedy would have been cumbersome, expensive and dilatory. He could have also moved, prior to the defendants starting their case, to dismiss against Williamson under section 1099 of the Penal Code, and then called him as a witness for the prosecution. That section provides: "When two or more defendants are included in the same accusatory pleading, the court may, at any time before the defendants have gone into their defense, on the application of the prosecuting attorney, direct any defendant to be discharged, that he may be a witness for the people." It is true that a motion under this section must be made before the defendants start their defense, but the prosecutor knew how Williamson was going to

testify. This is so because, as already pointed out, after his arrest Williamson had given several recorded statements to the police that were available to the prosecutor. These statements were substantially in accord with his subsequent testimony. But, understandably, the prosecutor, who could not use the recorded statements of Williamson against Alverson and Stoner because, as to them, they were hearsay, wanted to wait and see how Williamson's testimony affected the jury. At any rate he decided to wait to make his move until after Williamson had testified.

But, after Williamson and the other defendants had taken the stand, the prosecutor had still another possibility open to him. He could have moved to dismiss under section 1385 of the Penal Code. That section, in its pertinent part, provides: "The court may, either of its own motion or upon application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes." This section, unlike section 1099, permits such a motion to be made at any time during the trial, even after the defense has started. In a trial involving several defendants, it would appear that the argument on such a motion should be made outside the presence of the jury so as to not adversely affect the other defendants.

The prosecuting attorney did not see fit to use any of these alternatives. As already pointed out, he waited until Williamson had testified, and then, not in his opening but in his closing argument, asked the jury to believe Williamson, to acquit him and to convict the other two defendants. He did this on the representation that he personally believed Williamson's testimony exonerating himself and implicating the other two defendants. Thus he necessarily implied that he personally believed that Alverson and Stoner and their alibi witnesses were lying. The Attorney General concedes that by such tactics the prosecuting attorney in this fashion gained an advantage over the other two defendants. He states: "It is certainly true that the District Attorney gains an advantage of sorts. He appears before the jury as a man who has demonstrated in a striking instance how fair he is, and the jurors may regard the rest of what he says and does in a more favorable light." But, the Attorney General then argues, that "our solicitude for the defendant who receives the benefit of the recommendation should outweigh his advantage." There might be some merit to this argument if there

were no other way than the one used to benefit Williamson. But as already pointed out, there was a legal and proper way to grant this benefit to Williamson without taking unfair advantage of the other two defendants.

The tactics used by the prosecuting attorney necessarily disturbed the delicate balance between the defense and prosecution to the disadvantage of appellant Alverson. At the very outset of the trial the prosecutor comes into the case as a champion of the People paid to prosecute offenders. The very importance of that position is, of course, apparent to the jury. The defendant has, in his favor, the presumption of innocence. But, if in addition to his basic advantage of being the champion of the People the prosecutor is to be permitted to stand before the jury like a knight in shining armor, and state that he would not think of prosecuting a man he believed to be innocent, and that he personally believed one of the defendants whose testimony had implicated the other two defendants, then the prosecutor has secured a very unfair advantage indeed.

The argument of the prosecutor asking for the acquittal of Williamson for the reason that he personally believed that Williamson was innocent, and that he, the prosecutor, did not want to convict an innocent man, necessarily also told the jury that, by continuing to prosecute Alverson and Stoner he, the prosecutor, personally believed that they were guilty. Had he expressly made such a statement it would have been reversible error. ■ The law is well settled that such an argument is not only improper, but constitutes misconduct, is prejudicial and requires a reversal, even though not objected to by the defendant, and even though no request to admonish the jury to disregard it has been made.

In the frequently cited case of *People* v. *Edgar*, 34 Cal. App. 459, the district attorney among other things, in his closing argument, stated (p. 467 [167 P. 891]): "I will not prosecute any man that I do not believe to be guilty." In commenting on this remark the court declared (p. 467): "No justification has been made of this argument and, in our opinion, none can be made. It was grossly improper, and undoubtedly must have weighed heavily against the defendant. ... [T]he testimonial of the district attorney to his own integrity" had no "proper place in the case, and should not have been presented for the consideration of the jury."

And again (p. 468): "When the district attorney declared that he would not prosecute any man he did not believe to be

guilty he thereby wrongfully placed his personal opinion of the guilt of the defendant in evidence in the case." (Citing cases from several jurisdictions.) This last portion of the quotation was quoted with approval in *People* v. *Kirkes*, 39 Cal.2d 719, 723 [249 P.2d 1].

*People* v. *Hidalgo*, 78 Cal.App.2d 926 [179 P.2d 102], is also closely in point. There the district attorney in his closing argument stated (p. 938) : "I have stood in this courtroom— and I will do it again whenever the occasion arises—and tell you ladies and gentlemen of the jury that I don't think you should convict the man; I don't think he is guilty—when I don't think he is—and I have done just that right here. ... and any time I am not absolutely convinced of the guilt of a defendant brought into this courtroom here, I pledge you my word of honor, I will tell the jury about it."

In commenting on this self-adulatory statement the court stated (78 Cal.App.2d at p. 939) :

"There can be no question but that those portions of both statements in which the district attorney stated in effect that if he did not think the defendant guilty he would not prosecute him, are misconduct. As said in *People* v. *Chilcott*, 18 Cal.App.2d 583, at page 588 [64 P.2d 450] : 'With reference to the remaining statements included in the group now under consideration in which the prosecutor referred to the fact that he had never prosecuted or attempted to convict anyone of a crime unless he thought such person was guilty and that he conceived that it was his duty to prosecute if he believed that the evidence warranted such action, it must be conceded that these remarks were improper and should not have been made. As was correctly stated in *People* v. *Podwys*, 6 Cal. App.2d 71, 74 [44 P.2d 377] : "There can be no excuse for such comment." ' " (See also *People* v. *Love*, 56 Cal.2d 720, 730 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809] ; *People* v. *Adams*, 182 Cal.App.2d 27, 31 [5 Cal.Rptr. 795].)

Appellant also contends that the district attorney was guilty of prejudicial misconduct in trying to impeach the defendant by a showing that he possessed a narcotic.

This occurred under the following circumstances: Appellant appeared in propria persona. When arrested he had admittedly given a false address. On cross-examination the prosecutor, quite properly, brought out this fact. At the conclusion of the cross-examination, the appellant requested a conference with the trial judge out of the presence of the

jury. At that conference the appellant told the trial judge that the false address he had given was that of his mother, and that he had not given his correct address because he had some benzedrine tablets at his home address, and this fact he wanted to keep from the police. The trial judge expressed some concern over the fact that the defendant had not told the jury that the admittedly false address was, in fact, that of his mother, and appellant stated that he had not told the jury this fact because he did not think it was relevant. The trial judge and the district attorney believed that this fact was relevant and important. After some discussion, the prosecutor stated: "I will let you get back on the stand. I will be your attorney." Back in the presence of the jury, appellant again took the stand. The trial judge interrogated him and brought out that the false address was in fact the address of his mother. During this interrogation the trial judge carefully and properly prevented any reference to the benzedrine tablets. But on cross-examination the prosecutor asked appellant why he had given his mother's address rather than his own. The appellant asked the court if he had to answer that question, and when told that such was necessary, replied that it was because he had benzedrine tablets at his home address, and was afraid that if he gave that address the police would find them.

Of course, it is the law, that the guilt of a defendant of a particularly charged offense cannot be proved by evidence of general bad character, or, with certain exceptions not here applicable, by evidence of the commission of other crimes not relevant to the one charged.

In the instant case, there was no plausible reason for the prosecutor to have violated that fundamental rule by bringing the issue of narcotics into this burglary trial against appellant. Obviously, the evidence tended to and did degrade the appellant in the eyes of the jury. It should not have been produced.

It seems quite clear that prejudicial error occurred. The judgment appealed from is reversed.

Gibson, C. J., Traynor, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J.—I dissent.

*Facts*: Defendant and two codefendants, Stoner and Williamson, were jointly charged and tried for burglary. The jury

found defendant and Stoner guilty of second degree burglary, but acquitted Williamson.

At 3:30 a.m. on April 26, 1961, police officers investigating a ringing burglar alarm saw two men run from a store to a car. The officers gave chase and stopped the car, but as they approached it on foot, the driver ignored the warnings and drove off. The only one of the three occupants of the car whom the officers could identify was Williamson.

The chase proceeded, and defendant was stopped by officers while he was walking in the vicinity where they last observed the car. At this time he was carrying one of the stolen radios, which he claimed to have found.

The getaway car was in a lot across the street from where defendant was arrested. Stoner was found lying on the ground near it. Williamson's name was on a borrowing agreement for the car, and he was arrested two days later.

Both defendant and Stoner offered alibis, and Williamson's testimony was the only direct evidence which placed them at the scene of the crime.

Williamson claimed that he drove defendant and Stoner to a hotel near the scene of the burglary, ostensibly to collect a debt. After letting them out of the car, he drove around. When he returned, he saw them on the other side of the street and heard a burglar alarm. They ran to the car and stated that they had stolen some radios.

Williamson claimed he wanted to tell the police that he was not involved, but the others told him that the police would not believe him and that if he was caught with someone having a prison record, it would be a probation violation. When he saw the officers' guns, he decided to drive away.

*Questions*: First. *Did the trial court commit prejudicial error in repeatedly admitting into evidence certain admissions of Williamson and in allowing a police officer who had at first testified for the prosecution to be recalled as a defense witness in Williamson's behalf?*

*No.* Sergeant Larson, of the Los Angeles Police Department, was originally called as a witness for the People. He testified that in a conversation with him after Williamson's arrest, Williamson stated that he was the driver of the Nash automobile, that defendant and Stoner broke into the store, that he had no idea what they were planning to do, and that he ran from the police because he was afraid. The jury was properly instructed that these extrajudicial statements were admitted only as to Williamson.

On cross-examination, counsel for Williamson asked to be allowed to read to the jury Sergeant Larson's narration of his conversation with Williamson, as given at the preliminary hearing. He asserted that a recital of this statement would tend to impeach Larson's testimony at the trial. An objection by the district attorney on the ground there was no inconsistency was overruled.

Defendant contends that, in this instance, the district attorney was correct in making the objection, because the testimony was, in fact, almost identical.

Defendant argues the objective of counsel for Williamson was not to impeach the officer but to impress upon the jury that his client denied responsibility for the crime and identified his codefendants as the guilty parties.

Williamson thereafter took the stand himself and again incriminated defendant while denying his own complicity in the crime.

Sergeant Larson was later called to testify again; but this time as a defense witness for Williamson. He corrected in certain particulars the testimony he had given earlier in the trial. He had testified, concerning events leading up to the burglary, that Williamson told him he and defendant were out drinking on the night the crime was committed. He corrected this testimony by stating that after he had listened to a tape recording of his conversation with Williamson, he found he had made a mistake, that Williamson had said he and Stoner had made the rounds of the bars and later went to defendant's apartment, and not that he and defendant had been out drinking together.

This testimony was admitted in evidence under the "refreshed memory" rule. As corrected, the officer's testimony conformed with the order of events as recounted by Williamson in his testimony.

It is not permissible to get before the jury damaging and prejudicial, but inadmissible, evidence against a codefendant, under the guise of introducing an admission or confession by someone else who has made a statement.

The parts of such declarations containing accusatory and inadmissible statements against codefendants should be excluded, and only those parts which contain admissions against interest or confessions by a declarant, or which are properly admissible for purposes of impeachment, should be admitted. (*People* v. *Foote,* 48 Cal.2d 20, 23 [3] [306 P.2d 803]; *People* v. *Zammora,* 66 Cal.App.2d 166, 212 [11] [152 P.2d 180].)

In the present case, however, defendant waived any objection to the testimony which was improperly admitted in evidence, since from the record it appears that he objected to the introduction of the testimony on only one occasion and then withdrew the objection. The rule is settled that any claim of error is waived by failure to make a timely objection at the trial. (*People* v. *Marsh,* 58 Cal.2d 732, 747 [16] [26 Cal.Rptr. 300, 376 P.2d 300].)

Likewise, there is no merit in defendant's contention that it was error to allow the police officer to be recalled to testify as a defense witness for Williamson.

The prosecution cannot exercise control over whom a defendant may choose to call. If a defendant feels he can be benefited by calling one of the People's witnesses as his own witness, he has a right to do so, and the officer has the duty to testify.

Second. *Was it prejudicial error for the district attorney in his closing argument to recommend that the jury acquit Williamson?*

*No.* Since Williamson's testimony was the only direct evidence which placed the other defendants at the scene of the crime, the jury's verdict was dependent in large part on the credibility which the jurors placed on that testimony.

The deputy district attorney in his closing argument made the following comment: "Now, ladies and gentlemen, it's a very interesting situation sometimes that the District Attorney finds himself in, and it's infrequent enough that it's a delightful experience when it happens. ... I think Mr. Williamson is telling you the truth, and quite frankly I do not think he is guilty of this charge. ... Williamson, has taken the stand. He has told what I consider is a plausible, honest, forthright story."

The deputy then summarized the testimony and said: "I am beginning to sound like a defense counsel, but this is the duty of a District Attorney ... not to convict innocent people, it's to convict the guilty. ..."

A judicious use of recommendations of acquittal should be promoted and not discouraged. The instant case well illustrates this rule.

Confronted with a mass of evidence that could easily have sustained a conviction against Williamson, the deputy argued that he was innocent. Had the recommendation not been forthcoming, it is quite possible that Williamson's conviction

*would have resulted*, and *it is* likewise possible that that conviction would have withstood further review.

It is, of course, possible that Williamson was actually guilty. However, our legal system is constructed on the premise that it is better to free the guilty than to convict the innocent. Therefore, it is preferable to encourage the use of recommendations of acquittal rather than discourage them. Any other rule would discourage a prosecutor from making recommendations of acquittal where he believed a defendant to be innocent.

It is contended that the deputy district attorney's recommendation circumvented section 1099 of the Penal Code.* This contention is devoid of merit. It is clear from his statements that he did not formulate his opinion until after he heard Williamson's testimony from the stand, at a time when recourse to section 1099 would not have been possible. But there was no occasion to either circumvent or rely on the procedure contemplated by section 1099. The obvious procedure was the motion to dismiss in the interests of justice as procedurally recognized by Penal Code section 1385.

Nor is there anything to indicate that the deputy's investigation was inadequate or that he should have been able to make his decision earlier. Investigation in terms of questioning a defendant during the trial stages is not normally open to the district attorney.

It is also claimed that Williamson's statements were made incontestable when the deputy told the jury he believed his story, and that the accomplice instructions were rendered ineffective.

It would appear that these conclusions rest on an exaggerated view of the impact of the deputy's recommendation insofar as it bears on defendant.

A prosecutor is regarded as an advocate. His concessions are given more weight than what he urges to further his contention that a defendant is guilty.

The deputy's recommendation as to Williamson, because it was to acquit, would therefore normally carry more weight with a jury than the recommendation as to defendant's guilt, because it was to convict.

---

*Section 1099 of the Penal Code reads: ''When two or more defendants are included in the same accusatory pleading, the court may, at any time before the defendants have gone into their defense, on the application of the prosecuting attorney, direct any defendant to be discharged, that he may be a witness for the people.''

There was nothing incontestable in what the deputy recommended. The jury could still have convicted all three or acquitted all three. It could even have convicted Williamson and acquitted defendant.

What the deputy said affected no instructions. The jury remained as capable of applying accomplice instructions, or considering evidence for a limited purpose, as it was before his statements.

Juries frequently disregard recommendations by prosecutors and certainly must be deemed to scrutinize them with care and independent judgment.

The most that can be said of the deputy's action is that it gave him a chance to appear in a better light before the jury; but, in spite of what he said, the jury still retained its critical faculties. It is not beyond the bounds of possibility that the jury could have misconstrued his statements and acquitted all three defendants.

Third. *Was it error for the district attorney to argue that defendant's reason for lying to the police was the alleged fact that he had Benzedrine in his room?*

*No.* Defendant on cross-examination admitted to five prior felony convictions. Defamation by mentioning Benzedrine would have been, and was, superfluous. In any event, it could not have had any appreciable effect on the verdict. Therefore, under article VI, section 4½, of the Constitution, any alleged error on this ground must be disregarded by this court.

I would affirm the judgment.

Schauer, J., concurred.