[Crim. No. 4504. Third Dist. May 1, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RONALD WALTER GOODWIN, Defendant and Appellant.

A. Richard Backus, under appointment by the Court of Appeal, and Gary M. Gallery for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jack R. Winkler and Robert J. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.*—Defendant appeals from judgment, after jury verdict, of conviction of armed robbery of Ken's Pharmacy and from judgment, after jury trial, of armed robbery of Handy Pantry Market. This court appointed counsel to represent him on this appeal.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## QUESTIONS PRESENTED

1. Defendant's right to counsel was not abridged because of counsel also representing codefendant Smith.

2. No error in consolidating for trial the two charges.

3. No error in the absence of defendant's counsel at the lineup.

4. Alleged misconduct of prosecutor occurring on cross-examination of defendant concerning use of marijuana and in his argument to the jury.

## RECORD

Defendant alone was charged with armed robbery of Ken's Pharmacy on December 12, 1966. Defendant, with Evans and Smith, was charged with the armed robbery of Handy Pantry Market on December 14, 1966. The public defender was appointed to defend defendant on both charges and Evans on the one charge. Smith had his own attorney. Evans pleaded guilty to the charge against him and his case was continued for a probation report. The district attorney then moved for consolidation for trial of the two cases. Over defendant's objection and that of Smith the cases were consolidated. Before trial Smith's counsel withdrew and the public defender was appointed to defend Smith as well as defendant. At the trial the jury found defendant guilty of both charges and Smith guilty of the offense with which he was charged. Both defendant and Smith moved for a new trial. Their motions were denied. Defendant appeals from both judgments of conviction.

## EVIDENCE

*Ken's Pharmacy Robbery*: On December 12 at approximately 5:40 p.m., Ken Ouchida, the owner, was alone in his pharmacy. He was approached by a man who opened his coat, exposing a gun in his belt, and ordered Ouchida to give him the money in the cash register and morphine and dilaudid. Ouchida had neither of the drugs. He gave defendant approximately $400. Ordering Ouchida to sit down, the man left the store.

When first shown at the police station pictures of individuals, including that of defendant, Ouchida did not identify any one of them as the robber. A few days later he was shown six photographs, one of them depicting a lineup of which defendant was a member. Ouchida then identified defendant as the robber. At the trial, when asked if he saw the robber in the courtroom, he stated, indicating defendant, ''I think it's

that fellow there," and again, "It looks like that fellow there."

Nancy Stamphill, a frequent customer of the drug store, was parked at approximately 5:30 p.m., on the day in question, in the parking lot adjacent to the pharmacy. She noticed a 1957 black Pontiac with a white top, without a rear license plate, parked there. Defendant and another man were standing beside it. (She did not identify the other man.) The men appeared to be nervous. Defendant got into the car and the other man went into the pharmacy. That man had not returned about 5 minutes later when she went into the market which adjoins the pharmacy. In about 10 minutes she came out of the market and found the car and the men gone. She then went into the drug store to see if anything had happened as she was suspicious. At a lineup three days later she identified defendant as one of the men she had seen in the parking lot. She was positive that neither Smith nor Evans was the other man she had seen there.

Defendant testified that he was in the parking lot at about 5:30 p.m. He was waiting for his wife, who had gone into a market nearby. While waiting he went into the pharmacy and looked at anniversary cards. After a few minutes he returned to the car. He asked a man for a light and then entered the car. In a few minutes his wife returned and they drove home.

Defendant's wife corroborated his story as to his presence in the parking lot while she was shopping at the market.

*Handy Pantry Market Robbery*: On December 14, about 4 p.m., Burton O. West, manager of the market, and his clerk, William Brennon, were working at the checkstand, when Smith and Evans approached them. Evans ordered Brennon to lie down on the floor and West to give them money. When they did not comply immediately, Evans cocked the revolver he was holding, pointed it at Brennon, saying, "I told you to lay down there." Brennon did so, and West gave them approximately $100, $40 of which was in $1.00 bills. Then at the command of the robbers West lay down on the floor. After the robbers left, West ran outside and saw a black and white Pontiac with two men in it crossing the corner of the parking lot. West, in his own car, chased the Pontiac but it got away. He did not get its license number. Later from a lineup he picked Smith and Evans as the robbers.

At the approximate time in question, Miss Cassandra McAdams, a waitress in the Dairy Queen which is adjacent to the market, noticed a large black and white car with three

men in it drive up in front of the Dairy Queen and park there. Defendant was driving it. Smith got out of the car, winked at Miss McAdams, got back in the car and said something to defendant. The car was then driven to the rear of the Dairy Queen and parked there, apparently out of line of Miss McAdams' vision. However, by looking out the back door she could still see the men. She noted the license number of the car and later gave it to the police. She saw Smith and Evans enter the market and very shortly thereafter come running out, appearing to be very happy. Defendant still remained in the driver's seat of the car. Smith and Evans jumped into the car and the car sped off. The same day she was shown some photos but was unable to identify anyone. At a lineup in which were both Smith and Evans, she was only able to make a tentative identification of Smith. The police told her that they had located the car with the license number she had given them. She later came to the conclusion that defendant and Evans were the others involved with Smith, although she did not so indicate to the police.

Later, the night of the robbery, the Pontiac was located and ultimately ownership traced to defendant. He admitted the car to be his and was then arrested. Fifteen dollars, in the denomination of $1.00 bills and one $5.00 bill, was found in defendant's trousers. When asked, defendant's father produced a gun that he, the father, kept under his mattress.

In defendant's car the officers found a key to a room at the Beauty Rest Motel. The following day the officers arrested Smith and Evans in that room. In the room were five barbiturate capsules, narcotics paraphernalia (syringe, needles, spoons) and two guns.

According to the motel manager and his son, the room was rented to Evans, but defendant's car was seen parked in front of the room and defendant had visited Evans. On the evening of the robbery, Evans had obtained a second key from the motel, explaining that he had left his key with his brother.

Defendant testified that on the afternoon of the robbery he had loaned the Pontiac to Evans without knowing his purpose in borrowing it. Evans took him and his wife to a pancake house where they waited while Evans was gone. A little later Evans returned the car. Defendant's wife's testimony was to the same effect.

Defendant explained that the money on his person he got from his mother, and that when his wife discovered the motel key in the glove compartment of his car, he believed it to be

one they had probably forgotten to turn in when they had checked out of a motel in the past.

Evans, who earlier had pleaded guilty, testified that he committed the robbery with two other men, neither of whom was Smith nor defendant. In the afternoon of the robbery he had run into defendant; an acquaintance, and without explaining his purpose borrowed defendant's car. After he and the other two men robbed the market, he returned the car. He needed money to support his narcotic habit. The two guns and the narcotic paraphernalia belonged to him. Smith did not testify.

1. Defendant's right to counsel.

▆▆ Defendant now contends, although he raised no objection at the trial, that his constitutional right to effective counsel was denied by his having to share the services of the public defender with codefendant Smith.

His failure to object to joint counsel before or during trial constitutes a waiver of the right to individual counsel. (See *People* v. *Ingle* (1960) 53 Cal.2d 407, 417 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Rogers* (1962) 207 Cal.App.2d 261, 269 [24 Cal.Rptr. 341].) In *People* v. *Byrd* (1964) 228 Cal.App. 2d 646, 650 [39 Cal.Rptr. 644], the court said, concerning failure at the trial to object to the appointment of a single public defender to represent joint defendants, "the objection must first be raised in a timely manner in the trial court if it is to be relied upon on appeal."

Assuming that the issue can be raised for the first time on appeal, defendant has failed to disclose any actual conflict of interest between himself and his codefendant Smith, that he was in anyway prejudiced by the joint representation, or that the case was so complex that joint counsel was unable to represent him. Defendant seems to contend that a potential conflict existed between them, inasmuch as the evidence showed that in the Ken's Pharmacy robbery defendant was shown as being with another man. Defendant contends that his trial counsel should have argued that it was Smith and not he who committed the robbery and that failure to so argue demonstrates a conflict of interest resulting from the joint representation of himself and Smith. There actually was no factual basis to require defendant's counsel to attempt to shift the guilt to Smith. Hence, there was no conflict of interest. The pharmacist and Mrs. Stamphill identified defendant. Both excluded Smith as the other man. Had defense counsel claimed that the driver of defendant's getaway car was

Smith, who was not charged with this robbery, such claim was not only not supported by the evidence but would have been of no value to defendant.

The facts of the consolidated cases were fairly simple. Defendant robbed the pharmacy. The evidence showed that defendant drove the getaway car when Smith and Evans robbed the market. Smith did not testify nor in any way contradict defendant's claim that he had nothing to do with the robbery. No basis is shown for the claim that the public defender could not nor did not adequately represent both defendants.

If no adverse interest exists, and none is claimed in the trial court, the representation of more than one defendant by a single attorney is permissible. (*People* v. *Kerfoot* (1960) 184 Cal.App.2d 622, 645-646 [7 Cal.Rptr. 674].)

*People* v. *Odom* (1965) 236 Cal.App.2d 876, 878 [46 Cal. Rptr. 453], sets forth the applicable law and summarizes the situation in which conflicts of interest among codefendants may arise: ''The mere fact that a single attorney is appointed to represent multiple defendants does not mean that an individual defendant has been deprived of his right to counsel. [Citations.] Only if an actual or potential conflict of interest exists among codefendants and a motion for appointment of separate counsel is made in timely fashion, is it incumbent upon the trial court to appoint separate counsel. [Citations.] Conflicts of interest among codefendants may arise when it would profit one defendant to attack the credibility of another [citation]; when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another [citation]; when one defendant has a record of prior felony convictions and the others do not [citation]; when the defenses of codefendants are factually inconsistent [citation]; or when appointed counsel believes a conflict of interest may exist [citations].'' (See also *People* v. *Watkins* (1967) 248 Cal.App.2d 603, 606 [52 Cal.Rptr. 821].) None of these situations exist in the instant case except that Smith had a prior conviction and defendant did not. However, the fact of Smith's prior conviction never got before the jury. Smith pleaded guilty and admitted the prior. This fact, of course, was not admissible and would not have been unless Smith had testified, which he did not. Both defendant and Smith relied upon Evans' testimony that neither had anything to do with the robbery. For the same reason, defendant's counsel was in nowise restricted in cross-examination,

nor were the defenses of the two defendants factually inconsistent.

2. Consolidation.

 The district attorney moved for the consolidation of the two charges under the authority of section 1098 of the Penal Code, which provides in pertinent part: "When two or more defendants are jointly charged with any public offense . . . they must be tried jointly, unless the court orders separate trials. [W]here two or more persons can be jointly tried, the fact that separate accusatory pleadings were filed shall not prevent their joint trial."

*People* v. *Spates* (1959) 53 Cal.2d 33, 36 [346 P.2d 5], holds: "Section 954 of the Penal Code permits joinder of different offenses which do not relate to the same transaction or event where there is a common element of substantial importance in their commission." The trial court over the objection of both defendant and Smith ordered the consolidation.

There were common elements of substantial importance which authorized the consolidation of the information charging defendant alone with the information jointly charging him and two others. The *modus operandi* of the two robberies are similar. Each robbery occurred at approximately the same time of day and the participants were unmasked and armed with a pistol, and defendant's car was used in both robberies, defendant driving it in the second robbery.

Defendant's contention that because of the consolidation he was convicted in the market robbery solely as the result of "guilt by association" with Smith and Evans, who were narcotic users, is unfounded. He was convicted because the evidence showed that he associated with the other two in the robbery of the market to the extent that he drove the getaway car and their motel key was found in his car. His explanation that he thought it was from some motel he and his wife had visited did not hold water in view of the name of the motel on the key. It has been held that the fact the same gun has been used in the commission of two robberies justifies the consolidation of the two offenses. (*People* v. *Pike* (1962) 58 Cal.2d 70, 84, see cases cited p. 84 [22 Cal.Rptr. 664, 372 P.2d 656].)

"It has been held that the fact that the evidence of the prosecution may be strong as to one of two offenses of the same class charged in a single information and weak as to the other does not deny the trial court discretion to refuse severance." (*People* v. *Brock* (1967) 66 Cal.2d 645, 656 [58 Cal.

Rptr. 321, 426 .P.2d 889].) "Joinder of related charges, whether in a single accusatory pleading or by consolidation of several accusatory pleadings, ordinarily avoids needless harassment of the defendant and the waste of public funds which may result if the same general facts were to be tried in two or more separate trials [citation], and in several respects separate trials would result in the same factual issues being presented in both trials." (*People* v. *Brock, supra*, p. 655.) It is not required that the two crimes should have occurred on the same day or have been aimed at the same person or group. (*People* v. *Kramer* (1951) 103 Cal.App.2d 35, 39 [229 P.2d 53].) Moreover, had one charge been tried alone, evidence of the second charge would have been admissible to show common plan, scheme or design. (See *People* v. *Blalock* (1965) 238 Cal.App.2d 209, 223 [47 Cal.Rptr. 604].)

Defendant's contention that only the consolidation of the two charges made possible consideration of the drug motive completely overlooks the fact that defendant's conduct in the pharmacy where he demanded morphine and dilaudid introduced the drug motive.

Apparently, defendant's trial counsel did not believe there was any prejudice to defendant in the consolidation because when he was thereafter appointed to defend Smith, he did not question the order of consolidation. As hereinbefore pointed out, there was no conflict of interest between Smith and defendant. The trial court did not abuse its discretion in ordering the consolidation.

3. Counsel's absence at the lineup.

Defendant contends that he was deprived of due process in that he did not have the assistance of counsel at the police lineup, which right has been determined to be a constitutional guarantee. (*United States* v. *Wade*, 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] ; *Gilbert* v. *California*, 388 U.S. 263 [18 L.Ed2d 1178, 87 S.Ct. 1951].)

*Stovall* v. *Denno*, 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], holds that *Wade* and *Gilbert* are to be applied prospectively. *People* v. *Feggans* (1967) 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21], is to the same effect.

In the case at bench the lineups occurred in December 1966. *Wade* and *Gilbert* were decided in June 1967. As said in *People* v. *Caruso* (1968) 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336] : ". . . Since this is a pre-*Wade* and *Gilbert* case, before defendant may invoke an exclusionary concept he must demonstrate that the lineup 'resulted in such unfairness that it infringed his right to due process of law.'

(*Stovall* v. *Denno* (1967) 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1205, 87 S.Ct. 1967].)'' Defendant has not contended or shown that the lineup was unfair or ''unnecesssarily suggestive and conducive to irreparable mistaken identification.'' *Stovall* v. *Denno, supra*, p. 302 [18 L.Ed.2d, p. 1206].) Defendant was not prejudiced by not having his counsel present at the lineups.

4. Misconduct of prosecutor.

■ At the end of defendant's direct examination, defendant's counsel asked: ''Q. [Y]ou have heard testimony here today about—today about shooting heroin— [referring to Smith's testimony]. A. Yes. Q. Did you shoot heroin? A. No.'' On cross-examination the prosecutor asked defendant: ''Q. Do you use drugs at all, narcotics, drugs? A. None. . . . Q. Marijuana?'' The court sustained an objection to this question. The prosecutor then asked, ''Have you used drugs in the past, prior to . . . December 14?'' Defendant replied, ''Yes, I have used drugs before. Q. Narcotic drugs? A. Marijuana.'' The prosecutor then asked, ''When were you using marijuana?'' An objection to this question was overruled. Defendant replied that he used it when in the army in Germany.

When asked if he had ever been convicted of a felony, he replied, ''No,'' and then volunteered, ''I was undesirably discharged from the army, if that's what you want.'' When asked, ''For what?'' he replied, ''For possession of marijuana.'' Defendant's accomplice Evans admitted that his motive in robbing the market was to finance his narcotics ''habit.''

Defendant opened the door to the interrogation concerning his use of drugs when his counsel asked him concerning it. Moreover, when he robbed the pharmacy defendant asked for narcotics. Evans testified that he robbed the Handy Pantry Market to get money to buy narcotics. The evidence showed that defendant drove the getaway car. The prosecution was entitled to explore defendant's prior use of marijuana as bearing on the possible motive for the robberies.

■ Although defendant volunteered the fact of his undesirable discharge from the army, the prosecutor had no right to ask him why. (See *People* v. *Enriquez*, 190 Cal.App.2d 481, 485 [11 Cal.Rptr. 889].) However, under the circumstances, this error could not have been prejudicial as other evidence showed defendant's past use of marijuana.

■ Defendant further assigns as misconduct certain

alleged prejudicial statements of the prosecutor. They referred to defendant's former use of marijuana and to his association with the drug addicts, Evans and Smith. No objection was made to any of them, except for the one instance hereinbefore mentioned when the court sustained an objection to the question as to whether defendant used marijuana and instructed the jury to disregard it entirely.

*People* v. *Lyons* (1958) 50 Cal.2d 245, 262 [324 P.2d 556], states the general rule regarding misconduct of the district attorney which tends to and is likely to result in prejudice to the defendant: " ' [W]here no objection is made to such misconduct by the defendant, or where objection is made and the court sustains the objection and properly admonishes the jury, the misconduct claimed to be prejudicial to defendant's rights will not furnish grounds sufficient to justify the granting of a new trial or the reversal of the judgment. [Citation.] There are two exceptions to this general rule. One is where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. [Citation.] The other exception is where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. . . .' Whether a prosecutor has been guilty of prejudicial misconduct must be determined in the light of the particular factual situation involved."

Here, at their worst, the prosecutor's statements do not fall within the two exceptions of the general rule.

The instant case is not closely balanced. Defendant's car was used in both robberies; he was identified as the driver of the getaway car in the market robbery and as the robber at the pharmacy; he was seen standing by the car before the robbery; and a key to the Evans and Smith motel room was found in his car when he was arrested. Evans' story that it was not defendant and Smith who helped him in the market robbery was obviously false. Although he had met his two accomplices in the Los Angeles County jail and again in Sacramento, he only knew their first names.

We have hereinbefore discussed the prosecutor's questions concerning marijuana. The prosecutor was within his right in arguing that the motive for the pharmacy robbery was to obtain drugs and of both robberies to obtain money to buy drugs for the codefendants who were addicts, if not for defendant who had once used marijuana.

█ The prosecutor stated, ". . . I think his testimony was incredible, although expected after he entered a plea of not guilty." The prosecutor is free to characterize the evidence during argument as long as he does so fairly and without misrepresenting the record. This is not a situation similar to that in *People* v. *Alverson* (1964) 60 Cal.2d 803 [36 Cal. Rptr. 479, 388 P.2d 711], where the prosecutor went beyond mere comment on the credibility of defendant (which apparently the court conceded the prosecutor was entitled to do) and expressed an opinion on the innocence of one defendant which placed the prosecutor in the light of a "knight in shining armor" (p. 808) and prejudiced the two codefendants.

█ In response to a statement made in argument by defense counsel as to why defendant would participate in a robbery on the 14th when he had obtained $400 from a robbery on the 12th, the prosecutor stated that it must be obvious to the jury that robbery was defendant's business. If objected to, the court could have made it clear in admonishing the jury to disregard it that it was not based on any information other than the prosecutor's deduction from the fact that defendant had engaged in the commission of two robberies. Both because of the failure of defendant to object and because of defendant's evident guilt, the error must be deemed nonprejudicial.

Judgment affirmed.

Friedman, Acting P. J., and Regan, J., concurred.

A petition for a rehearing was denied May 28, 1968, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1968.