[Crim. No. 6194.   First Dist., Div. One.   Dec. 13, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. MICHAEL J. DILLINGER, Defendant and Appellant.

142

Salle Seaman Soladay, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, John T. Murphy and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defedant appeals from a judgment entered upon a jury verdict finding him guilty of violating Penal Code section 4532, subdivision (b) (escape, or attempt to escape, by a prisoner charged with a felony). Defendant makes several assignments of error, each of which will be hereinafter discussed together with the pertinent facts, under the headings which follow the preliminary statement of facts.

### Preliminary Statement of Facts

While awaiting trial on robbery charges in a county jail, defendant, accompanied by other prisoners, was transported to the courthouse to answer for an earlier traffic offense. Outside the first floor courtroom the deputy sheriff in charge left his prisoners for a moment while he handled some paper work with a police clerk. The deputy testified that he told the prisoners, "Remain here while I go the window, in a single file line." When he returned, defendant had disappeared through a back door of the building. A short time later defendant was captured in the bushes outside.

## Alleged Misconduct of Prosecutor

The principal assignment of error relates to claimed misconduct of the deputy district attorney during his argument to the jury when he stated: "Even assuming for the moment that this particular man on this day in question had done what he said he did, got sick, came out the back door and vomited, do you think he'd be here today? I mean, do you think he would be here at all today if that were the circumstance, he is standing here, gets sick out the back door. Do you think the Sheriff would charge him, or we would be trying him, even the way he tells the facts. It didn't happen that way." Defendant claims that this statement was an expression of personal belief by the prosecutor of defendant's guilt and that it constituted prejudicial error notwithstanding defendant's failure to object at trial. The Attorney General argues that the prosecutor's comment, "though perhaps injudicious and 'mild misconduct,'" was not prejudicial since defendant had admitted all elements of the charged offense.

Since a review of the record indicates to us that the jury's verdict was supported by the evidence, we relate the evidence, in view of the People's contention, in a light most favorable to defendant, and as it could have been believed by the jury.

Defendant "had been extremely ill for the last two days" preceding the alleged escape; it was "possibly pneumonia, or stomach flu." He had been "coughing and heaving and spitting up" that morning. He had eaten no breakfast, having given it to a cellmate because he didn't believe he could hold it down. He had asked to go on the doctor's list, but his request was refused. When taken to the courthouse defendant and six other prisoners were placed in a small enclosed truck with seats on the side. Outside the temperature was about 90 degrees; inside it was approximately 100. The truck "was joggling quite a bit and so on," and it reached speeds of 75 miles per hour. As he stood outside the courtroom defendant appeared ill; his face was pale. Defendant testified that he was violently ill at that point. While the officer was away defendant unsuccessfully tried to ascertain the location of a restroom. He then put his hand over his mouth and stepped out the back door of the building. As he did, the door, which had a hydraulic apparatus, "clicked." He vomited in the bushes. In doing so he soiled his shirt, and therefore he removed it. Defendant assumed that the door had locked itself; because of his 15 months in jail "I had it in my mind

that when the door closes it locks." Hurrying around the building to enter its front door and return to the prisoner's line, he again felt the need to relieve himself. While doing so he was apprehended by the officer.

Defendant insisted that he was not trying to escape; his intent was only to avoid vomiting on the courthouse floor. He stated: "I didn't ask authorization to leave, but I didn't feel in [those] circumstances there that it was really necessary." He explained that when jail prisoners are found in a place where they should not be, they are not usually charged with an escape, but instead with being in an unauthorized place and given jail discipline.

■ Adverting to the applicable law, we note, initially, that it is within the domain of legitimate argument for a prosecutor to state his deductions or conclusions drawn from the evidence adduced at trial, and, more particularly, to relate to the jury that, in his opinion, the evidence shows that the defendant is guilty of the crime charged. (*People* v. *Rogers*, 163 Cal. 476, 482 [126 P. 143]; *People* v. *Kirkes*, 39 Cal.2d 719, 723, 724 [249 P.2d 1]; *People* v. *Edgar*, 34 Cal.App. 459, 468 [167 P. 891].) However, statements by the prosecuting attorney, not based upon legitimate inferences from the evidence, to the effect that he has personal knowledge of the defendant's guilt and that he would not conduct the prosecution unless he believed the defendant to be guilty, constitute misconduct. (*People* v. *Kirkes*, *supra*, at p. 723; *People* v. *Alverson*, 60 Cal.2d 803, 808 [36 Cal.Rptr. 479, 388 P.2d 711]; *People* v. *Hidalgo*, 78 Cal.App.2d 926, 939, 941-942 [179 P.2d 102]; *People* v. *Chilcott*, 18 Cal.App.2d 583, 588-589 [64 P.2d 450]; *People* v. *Brown*, 81 Cal.App. 226, 241 [253 P. 735]; *People* v. *Edgar*, *supra*; *People* v. *Podwys*, 6 Cal.App.2d 71, 74 [44 P.2d 377].)

■ The cases which have articulated the rule of misconduct with respect to the declarations of the prosecutor that he believes the defendant to be guilty, have done so on the basis that the declaration was tantamount to a testimonial assertion that the prosecutor believed the defendant guilty from the inception of the prosecution, and they have condemned any such assertion because it implies that the prosecution possesses proof of guilt beyond that which the jury has examined. (*People* v. *Modesto*, 66 Cal.2d 695, 715 [59 Cal. Rptr. 124, 427 P.2d 788]; *People* v. *Kirkes*, *supra*, 39 Cal.2d 719, 723-724; see *People* v. *Edgar*, *supra*, 34 Cal.App. 459, 468; *People* v. *Hidalgo*, *supra*, 78 Cal.App.2d 926, 938-942.)

A reading of the argument in the present case indicates that the prosecutor was stating his deductions and conclusions from the evidence given at the trial. Accordingly, we are satisfied that remarks here challenged when read, and so when heard, in the context of the evidence adduced at the trial were within the domain of the legitimate argument.

The prosecutor commenced his argument with the following admonition: ''Keep in mind the argument is not evidence in the case, because anything the attorneys say, myself or Mr. Dillinger, acting as his own attorney, is not evidence in the case unless we are on the witness stand. Of course, during the argument no one is on the witness stand. The only purpose of the argument is to draw your attention to points of law and the facts as they were brought out in the case, so it will help you to decide the case so you won't overlook anything that might be a basis for your decision. . . . I just want to point out that that is the only purpose in the argument. It is not supposed to give you one side versus the other side, or prejudice you or make you sympathetic. It is to point out what, under the law and evidence, we think is important, so you won't overlook it when you decide the case.''

After reviewing the facts which showed that defendant was in fact charged with a felony, and in fact in the custody of an officer at the time of the acts which allegedly constituted the escape, the prosecutor approached the question of whether defendant did in fact escape or attempt to escape. In analyzing the testimony he stated: ''Now, what do we have in this case? What did we really argue about here, if anything? There's no question, the way everybody tells it, that the Defendant left this vicinity, where he was in custody, went around the building, and wound up here. There's a difference in the stories as to what was going on when he was around here. There's not much guess work about that. The other prisoners, even his witnesses, were fully aware of the limits of their custody as around this vicinity, and the Defendant pretty much admitted that absent his excuse because he was sick, he wanted to [sic] outside and throw up, he indicated, I believe, the limits might be farther under those circumstances. My own feeling is in the evidence that you are not going to get into much of an argument about the fact that he left the limits of his custody and that he knew that he was supposed to stick around in this area. That really leaves, I think, in the evidence here one thing that you are going to have to consider —and don't take it my way. If you see it some other way, do

it. But I'm just pointing this out as a possibility to you, that he wilfully departed the limits of his custody."

The prosecutor, after acknowledging that a fire or explosion in a jail, or the action of an epileptic would furnish grounds for finding that a prisoner was not leaving his place of confinement deliberately, stated: "They just simply have got to get out. It's really not a wilful departure. I think that's the element that is involved in the defense in this case." He then proceeded to argue that even if the defendant were sick, it was a technical escape. He further stated: "Well, the Judge is going to instruct you that physical illness is not a defense unless it has reached such a point that it is a substantial interference with his ability to act wilfully. That is the guy that gets the epileptic fit, somebody of that kind. You may or may not get to the point where you just can't control yourself any more. It is no longer a wilful act. This fellow did wilfully act. He went that way, instead of that way. . . ."

The prosecutor then followed with the language under attack. Had he stopped here, defendant might have cause to complain since the inference might be drawn from this statement that the authorities had knowledge of facts pointing to guilt which were not revealed by the evidence. The prosecutor proceeded, however, to analyze the evidence to establish why defendant's version of the occurrence should be disbelieved. The argument continues with a detailed analysis of the testimony of the officer charged with defendant's custody, the testimony of the gardener who observed defendant's flight, and the failure of defendant to complain of illness at that time. The deputy district attorney then compared the testimony of these witnesses with defendant's testimony, and that of the defense witnesses, and concluded his opening argument with the following statements: "Well, I think that's about the case. . . . The only excuse he has is that he was sick. . . . All he has to do is wilfully depart the lawful limits of his custody. If he did that, I think you ought to find him guilty. If that is proved beyond a reasonable doubt. Or if you have a reasonable doubt, you ought to return the other verdict."

In his closing argument the prosecutor concluded as follows: "I think the evidence shows he deliberately left the limits of his custody. How far he was gone, or going to go, it doesn't matter. I think he is gone as far as the law requires, and I don't think that his stories are reasonable stories. It seems to me that it was not a reasonable story in light of the evidence you have. He was in possession, certainly, of his mental faculties at the time, and you can come to any conclu-

sion you want whether he violated Section 4532b or not, but it is up to you to decide the way you see it."[1]

Under these circumstances we reiterate our conclusion, that we cannot find any prejudicial error in the unobjected to remarks of the prosecutor, with the following pertinent passage from *People* v. *Johnson,* 99 Cal.App.2d 717, 728-730 [222 P.2d 335] : "As to the first claimed error regarding the expression of opinion that the sheriff's office and district attorney's office *seemed* to think that Ted Johnson was the guilty man, the defendant is segregating a small portion of the record from its context. When that portion is examined in relation to the entire argument it is clear that he was basing his remarks upon an analysis of the evidence in the case. It did not therefore constitute prejudicial error, particularly where such statement was not objected to nor assigned as error. [Citation.] It does not appear from the statement that the jury could have been misled into accepting any substitute for evidence. . . ." (At pp. 729-730 ; see also *People* v. *Roberts,* 65 Cal.2d 514, 520 [55 Cal.Rptr. 412, 421 P.2d 420] ; *People* v. *Goodwin,* 261 Cal.App.2d 723, 735 [68 Cal.Rptr. 247] ; *People* v. *Gioviannini,* 260 Cal.App.2d 597, 610 [67 Cal.Rptr. 303] ; *People* v. *Warren,* 175 Cal.App.2d 233, 241-243 [346 P.2d 64] ; *People* v. *Head,* 108 Cal.App.2d 734, 737-738 [239 P.2d 506] ; and *People* v. *Acuff,* 94 Cal.App.2d 551, 558-559 [211 P.2d 17].)

### Waiver of Right to Counsel

At the time of trial defendant was 20 years of age. At his request, and after examination by the court, he was found competent to conduct his own defense, and his appointed counsel from the public defender's office was discharged. He now argues that it is a denial of due process to permit an accused minor charged with a felony to waive counsel and appear in propria persona. A similar contention was recently rejected in *People* v. *Lara,* 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202].

Defendant next urges that it was error for the trial court to accept his request to dismiss the public defender. This contention is likewise without merit. The record discloses that the

---

[1]The court instructed the jury that in determining the guilt or innocence of defendant they were to be governed solely by the evidence introduced in the trial and the law as stated to them by the court, that they were the exclusive judges of the effect and value of the evidence, and that they were not to consider as evidence any statement of counsel made during the trial.

public defender was dismissed after a proceeding in chambers in which the following occurred: two members of the public defender's office, which had been representing defendant for a month and a half prior to the request for dismissal, expressed to the trial court that they believed defendant capable of representing himself; the judge thereupon examined defendant and ascertained that defendant had a high school education, had studied law on his own, and had an I.Q. of 137; the judge also learned that defendant had been recently convicted of robbery, and had previously been convicted of forgery; the judge read the information to defendant who stated he understood it, and both the judge and the members of the public defender's office explained to defendant the gravity of the offense and the potential penalties if convicted; the judge inquired into defendant's knowledge of his privilege against self-incrimination and informed him of the circumstances under which his prior conviction could be placed in evidence before the jury; and finally, defendant was advised that he would be held accountable for the legal acumen required of an attorney.

Under the foregoing circumstances defendant's competence to represent himself was demonstrated. Accordingly, since a defendant has a constitutional right to represent himself once his competence is shown, it is error to deny his request to appear in propria persona. (*People* v. *Maddox*, 67 Cal.2d 647, 651 [63 Cal.Rptr. 371, 433 P.2d 163]; *People* v. *Carter*, 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214].) The trial court, therefore, acted properly in discharging the public defender.

■ Additionally, defendant contends that even if he was competent to waive counsel at the outset of the trial, the court should have withdrawn his waiver after the third day of trial when defendant cut his wrist. This cut was a superficial one caused by a pencil. An examination by a doctor and nurse indicated that this cut did not impair defendant's normal activities, and in the judge's opinion and that of defendant himself did not impair his ability to proceed with the trial. Moreover, defendant rejected the court's offer of a recess if he felt he did not want to proceed with the trial. Under the circumstances there was no reason for the court on its own motion to reappoint counsel.

■ Defendant contends further that his waiver was conditional and that the conditions of the waiver were not fulfilled, thus rendering his waiver invalid. He relies on *People* v. *Carter, supra,* 66 Cal.2d 666, 670-671, in which the defend-

ant waived counsel on condition that he could use the law library. In *Carter* the conviction was reversed because, inter alia, the waiver was conditional, and ineffective because the condition was not fulfilled. Here the waiver was unequivocal and unconditional. It was only after the court expressed itself as satisfied that defendant could represent himself that defendant requested the use of the telephone and the privilege of looking up any points of authority. There is no suggestion in the record, moreover, that these conditions were not fulfilled. To the contrary, defendant was permitted to make the telephone calls he requested. His only objection was that notwithstanding these calls were private, they were logged by the sheriff. Although the court felt that logging was a reasonable restriction it, nevertheless, ordered that the logging of defendant's calls be deleted. With respect to the research of legal authorities, defendant did not pursue his original request by indicating what authorities he desired to research. He contends that he was even denied the use of the Penal Code, but he fails to point out anywhere in the record where this was brought to the attention of the court. "[M]atters not presented by the record cannot be considered on the suggestion of counsel in the briefs . . . ." (*People v. Shaffer,* 182 Cal.App.2d 39, 45 [5 Cal.Rptr. 844].)

## Adequacy of Time to Present Defense

■ Defendant, relying on Penal Code section 1049 and *People v. Maddox, supra,* 67 Cal.2d 647, urges that he was given inadequate time to prepare his defense. Section 1049 is inapplicable. Under that section a defendant is entitled to at least five days after plea to prepare for trial. Here 48 days elapsed between the time defendant entered a plea of not guilty on August 26, 1966 and the commencement of the trial on October 13, 1966.

In *Maddox, supra,* it was held that a defendant who elects to appear in propria persona "must be given, if he requires it, as much time to prepare for trial as an attorney; and if a reasonable continuance is necessary for this purpose, it must be granted upon timely request." (P. 653.) In the instant case defendant made no request for a continuance; in fact when the case came on for trial defendant was asked if he was ready for trial and he replied in the affirmative. Nor did he at any time make any objection to going to trial because he did not have adequate time to prepare his defense. Under these circumstances defendant cannot urge this contention on

150

appeal. (See *Cody* v. *Justice Court*, 238 Cal.App.2d 275, 288-289 [47 Cal.Rptr. 716].)

### Request to Produce Witness

█ Defendant urges that it was error for the trial court to deny his request to have John Gamit, an inmate of the California Medical Facility at Vacaville, produced as a witness. The production of such a witness was governed by Penal Code section 2621 which, in pertinent part, provides that when a witness is in a state prison located out of the county where the trial is being held, an order for his removal may be made upon an application supported by an affidavit of the defendant showing that the testimony is material and necessary; and "even then the granting of the order shall be in the discretion of said superior court . . . ."

Defendant was represented by counsel from arraignment and until he procured the dismissal of counsel on October 13, 1966. On that day he was offered the assistance of the public defender's office in subpoenaing witnesses. On October 17, 1966 defendant appeared in chambers and requested that Gamit be called as a "corroborating witness" to bolster his evidence of illness. After the trial judge had indicated that the showing was "skeletal," defendant withdrew his request stating that the witness Anthony Esposito would do as well for the purpose. After a full day of trial defendant again appeared in chambers and renewed his request to have Gamit called. Esposito and Michael Gonzales, who were prisoners accompanying defendant on the day of the alleged escape, as well as defendant, had already testified that defendant had been ill before the alleged escape. The trial judge denied the request on the ground that the showing was insufficient. The denial was predicated upon the basis that the request was tardy, that defendant had previously expressed to the court that the witness would not be necessary, and because "the testimony . . . would at best be cumulative." Under these circumstances there was no abuse of the court's discretion. (See *People* v. *Davenport*, 210 Cal.App.2d 335, 339-340 [26 Cal.Rptr. 753]; *People* v. *Willard*, 92 Cal. 482, 486-487 [28 P. 585]; and see *People* v. *Rios*, 172 Cal.App.2d 623, 628 [342 P.2d 317], holding that tardiness alone is a sufficient reason for denying the request; and *People* v. *Peters*, 191 Cal.App.2d 581, 585-586 [12 Cal.Rptr. 745], holding that the proposed testimony must be more than cumulative in nature.)

The judgment is affirmed.

Sims, J., concurred.