[Crim. No. 4224.   First Dist., Div. One.   Mar. 5, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. NAPOLEON EDWARDS, Defendant and Appellant.

Herman H. Fitzgerald, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and John S. McInerny, Deputy Attorney General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from judgment (after jury verdict) of conviction of first degree robbery (violation of Pen. Code, § 211) and purports to appeal from the order denying new trial.[1]

QUESTION PRESENTED

Should the trial court on its own motion have instructed on (a) identification, (b) alibi?

RECORD

Shortly past midnight on February 9, 1962, Mrs. Kathryn Banchero, a clerk in a liquor store in Emeryville, was alone in the store.   Defendant entered and asked for a quart of ale. Mrs. Banchero reached into the refrigerator for the ale and as she turned around, defendant with his hand in his pocket stated "This is a stick up."   Shortly thereafter he produced from his pocket an 8-inch boning knife which he held touching her clothing, and said "Open the register before I cut you

---

[1]Such order is nonappealable. (See Pen. Code, § 1237.)

up." Mrs. Banchero opened the cash register and put approximately $65 into a paper bag, which she gave defendant. Defendant told her to hurry up or else he would cut her up. When she said that she had no more money, he asked for a fifth of Scotch. As she went for the Scotch, which was near the door, defendant went behind the counter. Grabbing a bottle of Scotch Mrs. Banchero ran out the door and yelled "I'm being held up." Looking back she saw defendant take from under the counter a bag containing $97 in coins. A Cadillac drove up, stopping about 25 feet south of the store. Defendant ran out, jumped in the car, and the driver drove it away.

About 5 a.m. Mrs. Banchero viewed two suspects at the police station. She said that neither of them was the person who robbed her. About 12:30 p.m. the same day she viewed defendant along with the same two suspects whom she had seen in the morning. When asked "Which one is it?" she identified defendant.

At the trial defendant denied being in any way implicated in the crime and claimed that he spent the night part time in the apartment of Melba Moody and part time in his apartment across the hall. Melba testified that he spent the entire night sitting up with her in her room, as she was not feeling well. A waitress at Maggie's Barbecue testified that she saw defendant there about 2:30-2:45 the morning of the robbery.

INSTRUCTIONS. (a) *Identification.*

Defendant makes no contention that the evidence was not sufficient to support the conviction. Defendant offered no instruction on identification nor on alibi, and the court gave no specific instructions on the subjects.[2] Defendant cites no cases supporting his contention that it is the duty of the court to instruct specifically on this subject of its own motion, but contends that the evidence of identification was so weak and insubstantial that a duty arose for the court to say something on the subject (just what does not appear).[3]

Defendant's contention that the evidence of identification is

---

[2]The public defender represented defendant on arraignment plea. The public defender withdrew and defendant was represented at the trial by counsel of his own choice.

[3]As said in *People* v. *Le Beau* (1955) 136 Cal.App.2d 69, 71 [288 P.2d 294], "He is not specific concerning the precise nature of the instruction which he now claims should have been given and which at the trial he failed to mention or request." In *Le Beau* the defendant asserted that the officer's identification of him was weak, as does defendant here concerning Mrs. Banchero's identification of him. The court there held that the identification was "definite and positive." (P. 71.) So it is

weak is based upon the fact that the robbery took not over 3 minutes; that for the first minute Mrs. Banchero did not know that a crime was to be committed; that she had worked 10 hours that shift and "was probably fatigued"; that her identification of defendant at the police station was made under circumstances which pointed to the defendant. However, a reading of her testimony shows strong evidence of identification. She testified that what made her positive were "his general features. You would look at his forehead, the shape of his face, his color, his complexion . . . his height and his weight . . ."; also his moustache, eyes and calm appearance. She further testified that looking at a person she gets "the full picture of his features, and then I make a special note of the ears. . . . I identify people by their ears. That is a means of identification. I have been more or less an ear bug, if you want to call it that." She identified defendant by his small ear lobes. She also identified the hat he wore at the police lineup as the one he wore at the robbery.

Actually, it is absurd to contend, as does defendant, that a woman who testified to what she called the "image" of defendant created in her mind as she saw him at the time of the robbery, and who described him so clearly, would not be able to identify him 10 hours thereafter, and needed the prompting of the police by saying "Which one is it?" While the correctness of her identification is a matter for the jury to determine (*People* v. *Hood* (1956) 140 Cal.App.2d 585, 588 [295 P.2d 525]), it is doubtful if there will ever be a stronger identification made in any case where only one person observes the perpetrator of a crime than was made here.

(b) *Alibi.*

■ Citing *People* v. *Williams* (1957) 153 Cal.App.2d 5 [314 P.2d 161], which holds "that, despite the alibi evidence introduced by appellant, the latter having failed to request an instruction with respect to it, the trial court was not obliged to give an instruction on the issue of alibi. [Citations.]" (p. 10; see also *People* v. *Whitson* (1944) 25 Cal.2d 593, 603 [154 P.2d 867]; *People* v. *Branch* (1962) 205 Cal. App.2d 688 [23 Cal.Rptr. 342]), defendant contends that because of the alleged weakness of the identification and be-

---

here. Applicable further is the following from *Le Beau:* "We observe also that the jury was fully and fairly instructed on the applicable principles of law. Under the circumstances we do not consider this point well taken." (P. 71.)

cause of the alleged strength of the alibi a duty arose on the part of the judge to instruct of his own motion on the subject of alibi, defendant having offered no instruction thereon. As we have shown, there is no weakness in the identification evidence. Nor was there any great strength in the alibi evidence. As we have stated, there was contradiction between defendant and his corroborating witness as to in which room or apartment defendant spent the night. Moreover, in other respects there were substantial differences between his testimony and hers.

Defendant cites cases from certain jurisdictions to the effect that where there is evidence of alibi or where there are special circumstances, the court *sua sponte* must instruct specially on the subject. As shown in *Williams* and the cases therein cited, such is not the law in California. Moreover, the evidence here does not show the special circumstances requisite to require the giving of alibi instructions were we to apply the rule of certain jurisdictions that under special circumstances the court of its own motion must instruct on alibi. As said in *Branch, supra,* at page 765, ''even if the identification was open to considerable doubt, it does not rationally require a special instruction as to the alibi which was also open to considerable doubt if the jury is instructed to consider all the evidence and acquit in the case of reasonable doubt.'' The jury here was so instructed.

The purported appeal from the order denying new trial is dismissed. The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.