[Crim. No. 6505. First Dist., Div. One. Apr. 1, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. SEARCY ALBERT HARDY et al., Defendants and Appellants.

324

Gaye Rosenkrantz and Sydney N. Tanner, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defendants each appeal from a judgment, after trial by jury, on verdicts finding them guilty of burglary in the second degree.

### The Facts

On September 7, 1966, at some time between 4:30 and 5 p.m., defendant Hardy drove a 1956 or 1957 model Cadillac into a service station in Concord which was operated by Marvin Johnson. The Cadillac was damaged in the left front area. Defendant Eastman, a passenger in the automobile, got out and asked Johnson if he carried a fan belt for a 1941 Plymouth. In the lube room and the station building Johnson and Eastman investigated and ascertained that no such fan belt was in stock. Eastman then inquired about tires and he and Johnson walked out to the automobile to discuss the price with Hardy. Defendants then left the station and approximately five minutes after their departure Johnson discovered that approximately $150 was missing from the cash box. Johnson testified that the Cadillac remained in the station for about 20 minutes in all and that it was parked in such a way that the driver's door was approximately 2 feet from the place where the cash box was kept. The key to the cash box was kept in a slot on the box itself and was clearly visible. A station attendant had opened the cash box in the course of business approximately 10 minutes after the arrival of defendants.

On November 2, 1966, Dorothy Sanford was on duty as a checker at the Louis Store in Concord. At approximately 1:10 p.m. on that date six Negro males entered the store together and subsequently went off in separate directions. One of them, identified as defendant Hardy, came to Mrs. Sanford's check

stand, with a lightbulb container. She rang up the purchase under the mistaken concept that there were two bulbs in the package. Observing that there was only one light bulb in the package, she closed the cash drawer and turned to write up the overring while Hardy was counting out pennies for his purchase. Hardy then asked Mrs. Sanford for four Tootsie Roll candy bars. She obtained these from the back of the check stand and rang them up, and while the cash register drawer was still open Hardy requested a box of Milk Duds candy. This candy was "way in the back" and while Mrs. Sanford reached down to get it, Hardy walked around to the end of the counter. After obtaining the Milk Duds, Mrs. Sanford observed that the cash register drawer was open more than was normal. At this time Mrs. Sanford observed defendant Eastman in the vicinity of the cash register. Hardy paid for his purchases with a dollar bill rather than with the pennies, and all six Negroes then left the store. After the departure Mrs. Sanford and the store manager checked the contents of the cash register and discovered that between $80 and $85 was missing.

Lola Williams testified for the defense and stated that she was with Eastman from approximately 7:30 a.m. to 2:15 p.m. on November 2, 1966, the date of the activities in the Louis Store. Late in November 1966 police officers ascertained that a 1957 green Cadillac with a damaged left front area was registered to defendant Eastman. Neither defendant testified in his own behalf.

### The Expert Testimony

At the trial of the case, Inspector John H. Bias of the Oakland Police Department testified as an expert on the crime of "till tapping." He was qualified without objection as an expert in the fields of burglary, boosting and till tapping. The prosecutor directed hypothetical questions to the witness predicated on an assumed state of facts similar to each of the two incidents in question in this case. Upon the basis of the service station hypothesis Bias was asked whether he had an opinion "as to what probably happened to the money," and he replied that in his opinion "a till tap took place." With respect to food store hypothesis, Bias was asked if he had an opinion "as to what happened in that case," and he replied that in his opinion "the till was tapped." In answer to further inquiries by the prosecutor, Bias went on to explain the basis of his opinion. In the process he explained precisely

what constitutes a till tap.[1] No objection to the expert opinion was entered by either defendant.[2]

Defendants now object to the admission of this expert testimony on the ground that it was directed to the ultimate question of law in the case. They particularly rely on the case of *People* v. *Carroll*, 80 Cal. 153 [22 P. 129] where the defendant was accused of conducting a "banking game" in violation of a specific section of the Penal Code which specified a "banking game" as one of the proscribed games. A witness testified as to what constituted a "banking game." The Supreme Court found it unnecessary to determine whether the witness was competent to give an opinion on the subject because whether or not the game in question was a "banking game" was a question of law.

In *People* v. *Clay*, 227 Cal.App.2d 87 [38 Cal.Rptr. 431, 100 A.L.R.2d 1421], this court disposed of the contention put forward by defendants. We there held that expert testimony was admissible on the subject of till tapping and that the trial court had properly overruled an objection to such testimony. Our rationale was that the subject matter of the police expert's testimony was sufficiently beyond common experience that an opinion of an expert would assist the trier of fact. (Pp. 94-95.) In reaching this conclusion we took cognizance of the long-established rule that a witness cannot express an opinion on the guilt or innocence of a defendant, but observed that it is also well settled in this state that an expert's opinion is not rendered inadmissible because it coincides with an ultimate issue of fact. Accordingly, we held that the result of the hypothetical question was to place before the jury the witness' opinion that the conduct of the defendant under the facts of the case was consistent with the procedure of a till-tapping operation, and that this was a permissible opinion although directed to an ultimate issue in the case. (P. 99.)

In *Clay* we distinguished *Carroll* by first pointing out that the latter case stands for the principle that an expert may not attempt to define a statutory term when its definition is a matter of law on which the court should instruct. We then pointed out that in *Clay* the expert witness did not testify as

---

[1] The witness stated: "a till tap is basically a removal of money from a till. It is usually accomplished by two (2) or more persons—one (1) of them—one (1) of the persons diverting the attendant's attention, while the other person rifles the till."

[2] Defendants did not object to any of the testimony concerning till tapping. However, they did object to certain testimony which seemingly went to matters of "service station management."

to the elements of the crime charged but merely described the *modus operandi* of a certain class of criminals, thus assisting the jury in determining a factual issue, namely, the defendant's intent when he diverted the victim's attention. (227 Cal.App.2d at p. 98; see also *People* v. *Crooks,* 250 Cal.App. 2d 788, 790-792 [59 Cal.Rptr. 39].[3])

Moreover, it is a well-established rule that the failure to make a proper objection in the trial court to evidence claimed to be inadmissible amounts to a waiver and precludes a defendant from raising such error as a ground on appeal. (*People* v. *Fontaine,* 237 Cal.App.2d 320, 329 [46 Cal.Rptr. 855]; *Robison* v. *Superior Court,* 49 Cal.2d 186, 187 [316 P.2d 1]; *People* v. *Kitchens,* 46 Cal.2d 260, 262 [294 P.2d 17]; *People* v. *Williams,* 148 Cal.App.2d 525, 532 [307 P.2d 48]; and see *People* v. *Arguello,* 244 Cal.App.2d 413, 421-422 [53 Cal.Rptr. 245].) Here, the record does not disclose any objection to the expert testimony in the court below.

## Sufficiency of the Evidence

Defendants argue that the circumstantial evidence in the instant case fails to exclude every other reasonable hypothesis than guilt. They base this contention essentially on the fact that no one saw either defendant take any money and on the fact that the service station attendant had access to the cash box during the period defendants were at the station. Defendants' position overlooks the well-settled rule of appellate review which we reiterated in *People* v. *Atwood,* 223 Cal.App.2d 316 [35 Cal.Rptr. 831] to the effect before a verdict may be set aside " 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . .' " (P. 325, quoting *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; see also *People* v. *Clay, supra,* 227 Cal.App.2d 87, 100; *People* v. *Bassett,* 69 Cal.2d 122, 138 [70 Cal.Rptr. 193, 443 P.2d 777].) As we stated in *People* v. *Clay, supra,* " 'If, as in the present case, the circumstances reasonably justify the verdict of the jury, an

---

[3]*People* v. *Clay, supra,* was followed in *People* v. *Crooks, supra,* where the court explained the purpose of such expert testimony as follows: ''Neither in *Clay,* nor in the case before us, was the expert testimony necessary to fill a factual gap in the People's case. The witnesses' expertise merely gave the respective triers of facts background from which they could infer that the somewhat unusual acts on the part of the respective defendants were motivated by an intent to enable a confederate to tap the till or empty the money belt, as the case may be.'' (250 Cal. App.2d at p. 792.)

opinion of this court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.' '' (P. 100, quoting *People* v. *Griffin,* 60 Cal.2d 182, 188 [32 Cal.Rptr. 24, 383 P.2d 432].)

▇ Here the evidence produced by the People makes a sufficient case. There was evidence that defendants arrived togther at the service station in an automobile registered to one of them. Further, there was, as we have seen, evidence that one of the defendants diverted the attention of the operator of the station while the other defendant was parked near the cash box. Additionally, evidence was adduced which showed that approximately $150 was missing from this cash box after defendants left the service station.

Moreover, there was clear evidence that defendants entered the Louis Store, that one of them diverted the attention of the checker while the cash register drawer was open, and further that money was missing from the register after defendants had departed. Taking all this evidence together and combining it with the properly admissible expert testimony, it was possible for the jury to reach a reasonable hypothesis for its verdict. Consequently, we conclude that this contention of defendants must also be rejected.

### Misconduct of the Prosecutor

▇ Defendants complain of two alleged instances of misconduct of the prosecutor at the trial of the case. In the course of the People's closing argument, the prosecutor made the following statement: ''You have here a couple of 'pros.' Sophisticated they may not be—but 'pros' they are. They may be so professional, that they will not only succeed in tapping two (2) tills—at least the two (2) tills we know of—but they may tap your till if they walk out of here—Now, these guys are so professional; they do this often enough—'' Defendants contend that the quoted comment deprived them of a fair trial because it placed the prosecutor's ''belief'' that defendants were ''pros'' before the jury for its consideration.

We note, preliminarily, that at the time the prosecutor made this comment counsel for defendant stated, ''I'm going to object to this line of argument,'' that the court then stated that ''this is for the Jury to determine this,'' and that no formal objection was subsequently made. The objection thus interposed was a general one, that is, it did not specify on

330

what ground it was urged. Such an objection is insufficient. *People* v. *Tolmachoff*, 58 Cal.App.2d 815, 826 [138 P.2d 61]; *People* v. *Wright*, 26 Cal.App.2d 197, 207 [79 P.2d 102]; *People* v. *Owens*, 123 Cal. 482, 490 [56 P. 251]; *Bundy* v. *Sierra Lumber Co.*, 149 Cal. 772, 775-776 [87 P. 622].)

■ It is a well-established principle, moreover, that it is within the domain of legitimate argument for a prosecutor to state his deductions or conclusions drawn from the evidence at the trial (*People* v. *Rogers*, 163 Cal. 476, 482 [126 P. 143]; *People* v. *Kirkes*, 39 Cal.2d 719, 723-724 [249 P.2d 1]; *People* v. *Dillinger*, 268 Cal.App.2d 140, 144 [73 Cal.Rptr. 720]), and that he "may use appropriate epithets warranted by the evidence. . . . [Citations.]" (*People* v. *Mitchell*, 63 Cal.2d 805, 809-810 [48 Cal.Rptr. 371, 409 P.2d 211]; *People* v. *Walker*, 247 Cal.App.2d 554, 563 [55 Cal.Rptr. 726].)

■ In the instant case the characterization of defendants as "pros" was warranted by the evidence which tended to indicate that defendants were engaged in systematic till-tapping operations. ■ Furthermore, as the court stated in *People* v. *James*, 218 Cal.App.2d 166 [32 Cal.Rptr. 283]: "in the argument before the jury, any reasonable inference may be drawn from the evidence; and . . . it is a matter within the discretion of the trial court to determine whether counsel stays within the permissible range of discussion. [Citations.]" (P. 173.)[4]

■ In the course of argument and after summarizing the evidence presented by the People, the prosecutor also made the following statement: "Now, what does the defense offer by way of explanation? Where is Mrs. Williams? Mrs. Williams is the only rebuttal witness. They offer no other evidence for the defense." Defendants contend that this statement was an impermissible comment on the failure of defendants to testify under the rule of *Griffin* v. *California*, 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229] which forbids any comment by the prosecution on a defendant's silence or instructions by the court that such silence is evidence of guilt. This contention is without merit. ■ The *Griffin* rule prohibits reference to a defendant's failure to take the stand in his own defense, but does not extend to comments on the state of the evidence or on the failure of the defense to intro-

---

[4]In *People* v. *Bandhauer*, 66 Cal.2d 524 [58 Cal.Rptr. 332, 426 P.2d 900], relied on by defendants, the prosecutor stated that he had rarely seen such a "depraved" character as the defendant. (P. 529.) However, in that case, the prosecutor's observation was based on his actual experience as a prosecutor and not on the evidence before the jury.

duce material evidence or to call logical witnesses. (*People* v. *Grant,* 268 Cal.App.2d 470, 475 [74 Cal.Rptr. 111]; *People* v. *Gioviannini,* 260 Cal.App.2d 597, 605 [67 Cal.Rptr. 303]; *People* v. *Parker,* 253 Cal.App.2d 567, 573 [61 Cal.Rptr. 411]; see *People* v. *Beghtel,* 239 Cal.App.2d 692, 695 [49 Cal.Rptr. 235]; *People* v. *Erickson,* 254 Cal.App.2d 395, 401 [62 Cal. Rptr. 108]; *People* v. *Montigo,* 248 Cal.App.2d 32, 38 [56 Cal.Rptr. 33]; see also *People* v. *Dillinger, supra,* 268 Cal. App.2d 140, 144-145.) The rationale underlying this rule is stated thusly in *Beghtel, supra*: "it seems quite clear that the rule enunciated in *Griffin* was not intended to require that the trier of fact, whether judge or jury, be immunized against any dictate of plain reason. . . . Rather, the purpose of the *Griffin* rule is to prevent a citizen's exercise of his constitutional privilege from being judicially emphasized as affirmative evidence to be used against him." (Pp. 695-696.)

 Accordingly, since the comment in the instant case reflects only on the state of the evidence, we perceive no error.

 Defendants also assert that the prosecutor committed prejudicial error in insinuating that Mrs. Williams was a perjurer and that this insinuation was compounded by the prosecutor's comment on defendants' failure to take the stand. As already pointed out, the comment alluded to was not a comment on the failure to take the stand, but a permissible comment on the failure of defendants to offer any evidence other than the testimony of Mrs. Williams. The record does not disclose that the prosecutor characterized Mrs. Williams as a perjurer or that he sought to impeach her in his argument by a bald accusation of perjury. He only argued that her interest in the outcome of the case, as disclosed by the evidence, disproved her truthfulness. (See *People* v. *Reese,* 220 Cal.App.2d 143, 146-147 [33 Cal.Rptr. 561]; Evid. Code, § 780, subd. (f).)

## Alleged Errors in Instructions

 Defendants predicate two contentions on alleged errors in instructions. First, they argue that the trial court erred in giving the following instruction: "All witnesses are presumed to speak the truth. This presumption, however, may be repelled by the manner in which he or she may have testified, by the character of his or her testimony, by his or her motives or bias, or by satisfactory contradictory evidence, or

332

by evidence that he or she has made at other times, statements inconsistent with his or her present testimony."[5]

The following instruction is based on former Code of Civil Procedure section 1847 which was repealed when the new Evidence Code became effective on January 1, 1967 (Evid. Code, § 12), and has been superseded by Evidence Code section 780, which states the rule that in determining the credibility of a witness the trier of fact may consider any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony and catalogs the most common factors that bear on the question of credibility. (See Law Revision Com. com. to § 780.)[6] The instant trial commenced in February 1967. Therefore, section 1847 of the Code of Civil Procedure was no longer applicable and the trial court erred in instructing the jury in the terms thereof. (*People* v. *Thomas*, 267 Cal.App.2d 698, 705 [73 Cal.Rptr. 590].)

The question which remains to be resolved, however, is whether the giving of this instruction constituted prejudicial error, the test being whether there is a reasonable probability that absent the error a result more favorable to defendants would have been reached. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) Defendants claim that this instruction derogated from the jury's sole right to determine the credibility of witnesses and that under the circumstances the jurors might have concluded that they were required to accept the testimony of the various prosecution witnesses. In considering this argument we note that prior to the giving of the foregoing instruction the court clearly instructed the jurors that they were "the sole judges of the credibility of any witness," and then proceeded to state essentially the matters affecting credibility set forth in Evidence Code section 780. We note, moreover, the applicable statement in *People* v. *Monteverde*, 111 Cal.App.2d 156, 168 [244 P.2d 447], that "Whether a jury has been correctly instructed is not to be determined from a consideration of parts of an instruction or from particular instructions, but from the entire charge of the court." Here the jury was thoroughly instructed as to its responsibilities in adjudging the credibility of wit-

---

[5]In their closing brief, defendants complain of a different form of this instruction which cannot be found in the record.

[6]The authors of BAJI and CALJIC in their notes to the 1967 revision of BAJI Instruction No. 26 and CALJIC Instruction No. 52, dealing with the credibility of a witness, comment that the repeal of Code of Civil Procedure section 1847 has eliminated the presumption that a witness speaks the truth as formerly stated in these instructions.

nesses. These instructions applied not only to the prosecution witnesses but to Lola Williams who testified on behalf of defendant Eastman.

Viewing the instructions as a whole, therefore, we do not believe that it is probable that the jury received the impression that they were required to accept the testimony of the prosecution witnesses. Accordingly, we do not believe that any prejudice resulted from the giving of the instruction in question.[7]

■ We now advert to the contention of defendant Eastman that in the light of the testimony of Lola Williams the trial court erred in not instructing the jury on the effect of his defense of alibi. The contention is totally without merit because the record clearly indicates that defendant Eastman did not request any such instruction. It is well-established law in California that even though substantial alibi evidence is produced by the defense, in the absence of a request for a specific instruction on the subject, it is not incumbent on the trial court to give such an instruction on its own motion. (*People* v. *Johnson,* 253 Cal.App.2d 396, 401 [61 Cal.Rptr. 225]; *People* v. *Edwards,* 213 Cal.App.2d 569, 571-572 [28 Cal.Rptr. 880]; *People* v. *Branch,* 205 Cal.App.2d 688, 692 [23 Cal.Rptr. 342]; *People* v. *Williams,* 153 Cal.App.2d 5, 10 [314 P.2d 161]; *People* v. *Williams,* 128 Cal.App.2d 458, 464 [275 P.2d 513].)[8]

### Alleged Improper Arrest

■ Defendants additionally contend that the trial court lacked jurisdiction over either of them since they were arrested without warrants and probable cause for arrest was not established. The question of the propriety of the arrests was not raised in the court below and it is settled that the issue of the legality of an arrest may not be raised for the first time on appeal. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Soto,* 262 Cal. App.2d 180, 184-185 [68 Cal.Rptr. 500].) Further, in the

---

[7]We observe that the defense entered no objection to the subject instruction.

[8]In *People* v. *Branch, supra,* 205 Cal.App.2d 688, the rationale of the rule was explained in part: ''A defense based upon an alibi, as contrasted with the defense of insanity, for example, is not an independent affirmative defense; that is, the alibi cannot be considered by itself, but must be considered in connection with all other evidence in the case. [Citation.] For this reason, in the absence of a request for a specific instruction on alibi, it is sufficient that the jury be instructed generally to consider *all* the evidence in the case, . . .'' (P. 691.)

334,

instant case there is absolutely nothing in the record which delineates when, where, how or why defendants were actually arrested. To suggest that the testimony concerning the presence of the Cadillac in the vicinity of the municipal court where defendants were present is somehow indicative of an illegal arrest requires us to indulge in impermissible speculation.

The judgments are affirmed.

Sims, J., and Elkington, J., concurred.