[Crim. No. 15745. Second Dist., Div. Five. Apr. 28, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL HOFFMANN, Defendant and Appellant.

## Counsel

Peter J. Linden, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey S. Wohlner, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**BRANDLER, J.**\*—

### Statement of the Case

By information defendant was charged with assault with intent to commit rape in violation of section 220 of the Penal Code (count I) and burglary in violation of section 459 of the Penal Code (count II) (entering a residence with intent to commit rape). Defendant's motion to dismiss under Penal Code section 995 was argued and denied. The case proceeded to trial. The court denied a mistrial, and the jury was discharged when it advised the court that it was deadlocked and unable to reach a verdict. The case was then set for retrial. After retrial the jury returned a verdict of guilty of assault with intent to commit rape in violation of section 220

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

of the Penal Code (count I) and first degree burglary in violation of Penal Code section 459 (count II). Motion for new trial was denied, probation was denied, and defendant was sentenced to the state prison. Defendant appeals from the judgment and the order denying his motion for new trial.[1]

## Statement of Facts

On November 9, 1967, Mrs. Jane Flagg moved to a four-room cottage at 804 East Mountain Street, Pasadena, with her four-month-old daughter. She met defendant, who lived in the front apartment at 802 East Mountain with his mother and their dog Shotsie; she saw him probably once a day going to or leaving the back door or playing with the dog. On December 11, 1967, she visited her mother, returned home between 9 and 9:30 p.m., put her daughter to bed, then read, played some records and retired at 12:30 a.m. She awakened and saw defendant standing next to her bed; he started to choke her, with what felt to her to be gloved hands by applying very severe pressure to her throat. She feigned unconsciousness and stopped breathing. Defendant then let go of her neck and put his hands in the crotch area of her pajamas. As defendant spread her legs apart she kicked him in the face, and he went flying across the room and hit the other wall. He kept coming at her probably five to six times, and she kept kicking him, screaming all the time. At one point he knocked the lamp off the night stand. After he was kicked the last time defendant picked himself off the floor and ran out the front door. Mrs. Flagg ran after him, and she last saw him running up the driveway towards the front yard of the 802 residence. She then reentered her house, closed the door and tried to regain her composure. In about two minutes defendant knocked at her door and asked her if she was all right and what was happening. As she did not want him to know that she knew he had been in her apartment she lied to him and told him she had had a bad dream and had awakened screaming. When defendant left, Mrs. Flagg telephoned her mother and told her to come over. Defendant returned to her house and stated he had a rifle which he wanted to give her for her protection. Because she wanted him to leave her and she did not know what he was going to do with the rifle, Mrs. Flagg again stated that she was fine and wanted to go back to sleep. Her mother came over within eight or ten minutes. The Pasadena police were then called and they were there within ten minutes. The following day Mrs. Flagg noticed a couple of bruise marks on the sides of her neck and around her windpipe.

Officer Long arrested defendant about 2:30 a.m. in the area between

---

[1]An order denying a motion for a new trial is nonappealable (Pen. Code, § 1237; *People* v. *Ing,* 65 Cal.2d 603, 614 [55 Cal.Rptr. 902, 422 P.2d 590].)

802 and 804 East Mountain Avenue, and he observed a slight cut on one of defendant's cheeks and an abrasion on the other. The cut appeared to be fresh. Blood had come from under the skin and was in the process of drying.

Officer Elwell, who responded to Mrs. Flagg's call, spoke to Mrs. Angela Hoffmann, defendant's mother, on the back porch of 802 East Mountain. With the permission of Mrs. Hoffmann the officer entered the apartment and observed a pair of gloves lying on a table in a bedroom which Mrs. Hoffmann said was that of defendant. Without objection the leather gloves were received in evidence.

### Defense Testimony

Jerome Weirich, who lives at 812 East Mountain, was awakened about 2:25 a.m., December 12 by the barking of a German Shepherd, and he heard a woman screaming. He looked out and saw defendant at the front door of the cottage of 804. He heard defendant knock at the door of that cottage and call out "What's the matter in there? Are you all right?" Mr. Weirich later heard defendant say "I have a gun here. You can have it and keep it with you if you are nervous."

Mrs. Angela Hoffmann, defendant's mother, testified that she was awakened by the loud barking of her German Shepherd and she saw her son, the defendant, with a flashlight looking over the grounds. She was within two feet of him and saw no scratches on his face. She kept a key to the cottage at 804 East Mountain in her home.

Defendant testified that he did not enter Mrs. Flagg's apartment nor attempt to attack her but that he heard his dog barking and a woman screaming. He then went to 804 East Mountain, knocked at the door and asked Mrs. Flagg, "What's happening in there?" Mrs. Flagg said she had had a bad dream but that she was all right. Defendant testified that he injured his face December 11 when some hot grease splashed over his left eye, which blistered, and that the blister was opened December 12 when one of the police officers slapped him. He admitted serving two prior burglary convictions and admitted that the gloves were his.

### Contentions on Appeal

Defendant contends that he was denied effective representation by counsel at his trial[2] and that this resulted in an unfair trial and a miscarriage

---

[2]At the first trial which resulted in a deadlocked jury defendant was represented by privately retained counsel, M. G. Franciscus. Prior to the case being reset for trial Mr. Franciscus was relieved as counsel of record and the public defender appointed.

of justice because (1) counsel failed to object to the introduction of the gloves purportedly belonging to defendant and taken by the police; (2) counsel failed to adequately prepare a defense and discuss the case with defendant prior to trial; (3) counsel failed to attack discrepancies in the testimony of police Officer Long; and (4) counsel failed to request the giving of an instruction on alibi.

## Discussion

### Defendant was Effectively Represented by Counsel

"Competency and effectiveness of counsel has been generally divided by the courts into two areas. Competence in the sense of strategy, tactics and judgment exercised by the counsel during his conduct and control of the case [citations] or competence or lack of it when the attack is made because of lack of knowledge of the law [citation] or lack of preparation and investigation exhibited by his counsel. [Citation.] ■ In respect of the latter situation, . . . 'To justify relief on this ground, "an extreme case must be disclosed." (Citations.) It must appear that counsel's lack of diligence or competence reduced the trial to a "farce or a sham." (Citations.) ■ It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled.'

■ "Thus it is clearly not enough that appellant alleges omissions of counsel indicating lack of preparation and general incompetence.. Appellant must show that such acts or omissions resulted in the withdrawal of a crucial defense from the case." (*People* v. *Kirchner,* 233 Cal.App.2d 83, 86 [43 Cal.Rptr. 218].)

The burden of sustaining an allegation that an appellant was denied effective representation of counsel rests upon him. (*People* v. *Hill,* 70 Cal.2d 678, 688 [76 Cal.Rptr. 225, 452 P.2d 329].)

The public defender represented defendant during the retrial and until the hearing on a motion for new trial. Just prior to hearing of motion for new trial the public defender was relieved and William Bjornsen was substituted as counsel for defendant. Mr. Bjornsen represented defendant at the hearing of the motion for new trial and imposition of sentence. Mr. Peter J. Linden is defendant's court-appointed attorney to represent him on this appeal.

A review of the record discloses the resourcefulness and varied efforts of the public defender on behalf of defendant. Even prior to impanelment of the jury he made a pretrial motion to dismiss count II; he likewise made pretrial objections to the prospective impeachment of defendant by proof of prior felony convictions.

### (1) *No Error in Failing to Object to Evidence*

■ It is true that no question was raised at trial concerning the issue of unreasonable search or seizure and that when the gloves were offered in evidence defense counsel affirmatively stated that he had no objection to their introduction; but this was for good reason. Officer Elwell testified that he had permission to enter the Hoffmann residence and that the gloves were found in defendant's bedroom. (*People* v. *Hill,* 69 Cal.2d 550, 554-555 [72 Cal.Rptr. 641, 456 P.2d 521]; *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469].)

■ "The failure of counsel to object at the trial does not ordinarily indicate either incompetence of counsel or unfairness to the client. The system of objections is a useful tool in the hands of a trained professional for the exclusion of matter which should not be received into evidence. But the indiscriminate use of objections, solely because they are available, aids neither the client nor the cause of justice. ■ The choice of when to object and when to allow the evidence to come in as offered is inherently a matter of trial tactics. Ordinarily the tactical decisions of trial counsel will not be reviewed with the hindsight of an appellate court. [Citations.] The decisions which counsel must make in the courtroom will necessarily depend in part upon what he then knows about the case, including what his own client has told him. There may be considerations not shown by the record, which could never be communicated to the reviewing court as a basis for its decision. Thus, the appellate court's inability to understand why counsel did as he did cannot be a basis for inferring that he was wrong." (*People* v. *Garrison,* 246 Cal.App.2d 343, 350-351 [54 Cal.Rptr. 731].)

"[C]ounsel's failure to make objections, or his consent to informality in the introduction of evidence, does not reflect any impropriety. . . ." (*People* v. *Garrison, supra,* at p. 356.)

It must be remembered that trial counsel was a public defender who was adept at trying criminal matters, and did so on a daily basis. Considering his daily experience it can only be reasoned that his failure to object was a matter of tactics and strategy rather than ignorance of his right to make such an objection.[3]

---

[3]The following colloquy took place: "Mr. MATHIESEN: There are other trial tactics and I believe the trial tactics are my concern. I understand Mr. Hoffmann, if he is convicted, of course he will suffer the consequences. On the other hand, I feel I know where I am directing my goal and I don't think Mr. Hoffman is in the position of doing the same thing. THE COURT: If this is a matter of trial tactics, I certainly don't feel any inquiry is necessary of the defendant. I might just say this: I don't think interruptions of your own counsel or the Court during the pendency is psychologically of any help with the jury and have the opposite effect. I, personally, have absolute con-

*(2) There was no Failure on the Part of Counsel to Prepare a Defense or to Speak to Defendant Before Trial.*

The record shows that the deputy public defender stated that it was his policy to see a client at least three times before trial. He had been given a comprehensive written statement by defendant which he had read prior to conferring with him. Defense counsel also had read a copy of the preliminary hearing transcript before the interview. On March 28, 1968, he ordered a copy of the reporter's transcript of the first trial and secured a continuance to April 22 so that he could digest it. After reading it he spoke with defendant again. On April 22, 1968, trial counsel moved to continue the trial until May 8 to allow further preparation.

The public defender also presented four witnesses in defendant's behalf. Even assuming that his trial counsel lacked preparation and general competence, defendant has not shown that a crucial defense was withdrawn from the case. (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

*(3) There was no Failure to Cross-Examine and Develop Discrepancies in the Testimony of People's Witnesses.*

Defense counsel cross-examined Mrs. Flagg at length as to her identification of defendant. He attempted by that cross-examination to establish that the intruder may have been a male friend of a former tenant who had had frequent male visitors.

The public defender called several witnesses (Mrs. Hoffmann and police Officer Elwell) in an attempt to impeach the testimony of Officer Long and Mrs. Flagg regarding the presence of scratches on defendant's face.

*(4) Failure to Request Instruction on Alibi Did Not Result in a Lack of Effective Representation.*

At the conclusion of the trial the court in its discussion with counsel concerning the giving of instructions suggested giving an alibi instruction if requested: "THE COURT: . . . There is one more instruction I will give if you request it. I really don't think it is necessary because it is so implicit, but there hasn't been a requested instruction on alibi. I will give that if you

---

fidence in Mr. Mathiesen. If I were so unfortunate as to have to be charged with an offense of this nature or any nature, I can't think of anybody who would be more in a position to give me an adequate defense and would know more about which objections to make and which not to, and which questions to ask and which not to than Mr. Mathiesen. Beyond that, all I can tell you is you have a lawyer. He is a good lawyer and he is going to make the decisions as to tactics and strategy in this case."

desire. MR. MATHIESEN: I believe not, your Honor. THE COURT: Well, it is implicit in the whole defense that he is not the man, so I can't see where it possibly adds a thing, but here, again, it is a mandatory instruction on request. It is not requested and I think it unnecessary without requesting."

■ The trial court need not give an instruction on the issue of alibi if it is not requested. (*People* v. *Edwards,* 213 Cal.App.2d 569, 570 [28 Cal. Rptr. 880].) ■ It is required to give instructions on general principles of law pertaining to the issues, but is not bound to instruct on specific points developed at the trial unless requested by a party. ■ Alibi evidence is considered a "specific point"; therefore, absent a request for an instruction the court is not obliged to give one. ■ An appellate court will not undertake to consider this contention for the first time on appeal. (*People* v. *Williams,* 153 Cal.App.2d 5, 10 [314 P.2d 161]; *People* v. *Hardy,* 271 Cal.App.2d 322, 333 [76 Cal.Rptr. 557].)

The rationale of the above rule is found in *People* v. *Branch,* 205 Cal.App.2d 688, 691 [23 Cal.Rptr. 342]: "A defense based upon alibi . . . is not an independent affirmative defense; that is, the alibi cannot be considered by itself, but must be considered in connection with all other evidence in the case. [Citation.] For this reason, in the absence of a request for a specific instruction on alibi, it is sufficient that the jury be instructed generally to consider *all* the evidence in the case. . . .".

The jury was specifically instructed that they were to consider all the evidence and that they could not convict defendant unless they were satisfied beyond a reasonable doubt that he was the person who committed the offense.

In denying defendant's motion for a new trial the court commented on the competency of Mr. Mathiesen, the public defender who represented defendant, and on the issue of trial tactics and strategy as follows: "Now, in this case I think I have a right to take judicial notice both of the conduct of this case and other cases that are tried in my court. I will say, and I am not trying to gild the lily, that there are no attorneys who come into this court with a higher standard of ethical responsibility and attention to duty than Mr. Mathiesen who is the Public Defender in this case."

The attempted appeal from the order denying motion for new trial is dismissed. The judgment is affirmed.

Kaus, P. J., and Reppy, J., concurred.

A petition for a rehearing was denied May 26, 1970, and appellant's petition for a hearing by the Supreme Court was denied June 24, 1970.