[Crim. No. 1417. Fourth Dist. May 19, 1959.]

THE PEOPLE, Respondent, v. VICTOR LEIGHTON GOULD, JR., Appellant.

George R. McClenahan for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

MUSSELL, J.—Appellant was charged with the crime of burglary (Pen. Code, § 459) in that on or about March 13, 1958, he did wilfully enter a building known as a washroom of a trailer park in Palm City, San Diego County, with intent then and there and therein unlawfully and feloniously to commit theft. He entered a plea of not guilty and a trial by jury resulted in a verdict finding him guilty of burglary as charged in the information and fixing the degree of the crime as burglary in the second degree. Appellant was committed to the psychopathic ward for advisory psychopathic proceedings and report to the court and further hearing was ordered for July 15, 1958. On October 10, 1958, the trial court, after having read and considered the probation and other reports, arraigned appellant for judgment and ordered that he be punished by imprisonment in the state prison at Chino, California.

Appellant appeals from the judgment of conviction, claiming prejudicial misconduct on the part of the district attorney

and error of the court in failing to admonish the jury to disregard certain testimony and statements of the district attorney. It is not the contention of the appellant that the evidence is insufficient to support the verdict.

On March 13, 1958, shortly after midnight, appellant was arrested by a police officer in the washroom of the Palm City Trailer Park in Palm City, San Diego County. The washroom contained a washing machine, a drier, a soft drink machine, a cigarette machine, and a public telephone, book and receptacle. At the time the officer entered the room there were no lights on, the door of the cigarette machine (which contained a coin box) was pried open and clothespins had been slipped behind it. The appellant was standing over the drier and a screw driver and a pair of pliers were lying on top of it. The officer asked appellant "whose these were" (meaning the pliers and screw driver), and he said, "Mine." When asked what he was doing there, appellant replied, "I live here and my wife sent me down to light the pilot light in the drier." Later, appellant stated to the officer that he came to see what he could get out of the machines and that he entered the washroom to see if he could get something. When questioned at the city jail on March 14th, appellant stated he had financial problems with his wife; that he was having trouble making ends meet and was trying to figure out how to get some money; that he had thought of committing a theft on that day and was going to drive around and try to find a place to commit a theft; that he went to the trailer court to use the rest room, found it locked, entered the washroom saw the cigarette machine, decided to open it, procured a screw driver from a lady who had just driven into the court, and then started to pry open the machine.

Mrs. Ann Marie Larson, who lived at the trailer park with her husband and little girl, testified that she came home from work at about 12:20 a.m. on the morning of March 13, 1958; that she parked her car in front of their trailer and when she got out of it, the appellant approached her and asked her for a "good hefty" screw driver and stated he had locked himself out of his car; that she asked appellant where his car was located and he said "about four or five trailers down," pointing to the east; that she then waited in her trailer for about five minutes, went to the washroom to get a package of cigarettes and see "where the appellant was trying to get into his car"; that when she entered the washroom it was dark but she saw a person standing by the cigarette machine; that she got

her cigarettes and that the machine seemed to work all right; that she then returned to her trailer and called the owner of the trailer park, who phoned the police.

Appellant claims that the prosecutor's remarks to the jury concerning circumstantial evidence were prejudicially erroneous. The record shows in this connection that the prosecutor, in arguing to the jury relative to the force of appellant's admission to police officers and their testimony, said:

"The defendant has denied making certain statements to the police department when he was up here on the stand under oath and two police officers or three police officers have stated under oath that he made those statements and that is about what it boils down to. I think these other factors are important, but this isn't a circumstantial evidence case, as Mr. McClenahan would lead you to believe. You have got direct evidence. What could be less circumstantial than a man's statement to another man that he had the intent to do this or not? . . . "You take the law from the court, ladies and gentlemen, but that is not circumstantial evidence."

█ Under sections 1831 and 1832 of the Code of Civil Procedure the testimony of a witness that defendant admitted guilt would seem to be direct evidence that an admission or confession was made by the defendant, but circumstantial evidence of the truth of what was admitted. (*People* v. *Koenig*, 29 Cal.2d 87, 91 [173 P.2d 1].) In the instant case it is by no means clear as to whether the prosecutor was referring to the fact that admissions were made or to the truth of what was admitted. There is no indication that the remark was not made in good faith and the prosecutor told the jury to take the law from the court. █ In *Davis* v. *Franson*, 141 Cal.App.2d 263, 271 [296 P.2d 600], it is said that a lawyer is not guilty of misconduct merely because he is wrong as to the law, and that to constitute misconduct in urging a proposition of law, counsel must do so in bad faith. █ Moreover, the trial court in its instructions herein correctly defined direct and circumstantial evidence and told the jury it was his duty to instruct as to the law applicable to the case and that it was the duty of the jurors to follow the law as stated by the court. Under the circumstances, there was no prejudicial misconduct shown on the part of the prosecutor in the remarks made.

█ Appellant further argues that there was prejudicial error in admitting testimony concerning appellant's possession of dangerous drugs. The evidence shows that the appellant parked his car a short distance from the washroom and

that he stated to Mrs. Larson that he wanted a screw driver because he had locked himself out of his car. However, a police officer testified that he took the keys to the car from appellant's right hand pocket when they went to his (appellant's) car and that appellant did not use his keys to unlock it; that the car was not locked and that he (the officer) opened the door, leaned through, and then opened the door on the other side and that appellant did not say anything about his car having been locked. These circumstances justified the examination of the car by the officer. When the officer was being questioned by the prosecutor at the trial he was asked if he had occasion to search the car and "what was found, if anything." He replied, "various assortment of pills, dangerous drugs." One of the jurors then said, "I didn't hear that last part." The officer then said, "I said an assortment of pills and dangerous drugs were found in the car." Counsel for appellant then made a motion to strike and this motion was denied by the court. Appellant's counsel claims that this testimony had a highly prejudicial effect on his client. However, the record shows that appellant's counsel conducted a lengthy cross-examination of the witness as to the quantity and exact nature of the pills and dangerous drugs found in the car. He sought information from the officer as to when appellant had obtained the pills and asked the witness to read a list containing the numbers and names of the various pills as shown on the officer's arrest report. He asked the witness to relate what appellant had said relative to the circumstances under which he had obtained these pills, thus introducing testimony not called for in the question asked by the prosecutor. The conduct of the district attorney was limited to what was found in the car and he did not pursue the subject. The record shows that appellant drove to the scene of the crime in his car and parked it near the washroom; that he told Mrs. Larson his car was locked and he needed a screw driver to pry open the window. The screw driver and a pair of pliers were found in the washroom and appellant admitted prying open the cigarette machine. Under these circumstances there was no prejudicial error on the part of the prosecutor in asking the criticized question or in the trial court's failure to strike out the answer thereto.

Judgment affirmed.

Griffin, P. J., and Shepard, J., concurred.