[Crim. No. 3691. Fourth Dist., Div. Two. May 28, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
PAULETTE ANNE CALPITO, Defendant and Appellant.

214

## COUNSEL

Doty, Quinlan & Kershaw, William A. Quinlan and Edward L. Fanucchi for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KERRIGAN, Acting P. J.**—The defendant, Paulette Anne Calpito, was charged with two offenses arising out of a single incident: (1) robbery of lawful money (Pen. Code, § 211), and (2) conspiracy to commit robbery (Pen. Code, § 182.1); an act of sexual intercourse between the defendant and the victim, Phillip G. Waterman, was charged as an overt act in pursuance of the conspiracy. Defendant plead not guilty as to each count. She was convicted by jury of attempted robbery, a lesser offense included within the charge of robbery, and found not guilty of the charged offenses of robbery and conspiracy. Her motion for a new trial was denied and she was granted probation for a period of three years on condition she serve eight months in the county jail. Defendant appeals from the order denying the motion for a new trial and the judgment. We will regard the appeal as being from the order granting probation as such an order is deemed a judgment for the purpose of appeal. (*People* v. *Johnson,* 258 Cal.App.2d 165, 166 [65 Cal.Rptr. 441].) The order denying the motion for a new trial is not appealable and the purported appeal therefrom must be dismissed. (*People* v. *Alfreds,* 251 Cal.App.2d 666, 668 [59 Cal.Rptr. 647].)

Defendant's appeal takes the following form: (1) The jury verdicts of not guilty of conspiracy and guilty of attempted robbery are inconsistent; (2) it was error for the trial court to instruct the jury on the lesser offense of attempted robbery over the defendant's objection; (3) the trial court should have instructed the jury *sua sponte* on the lesser offenses of assault with a deadly weapon and simple assault; (4) insufficiency of the evidence to support the conviction of attempted robbery; and (5) misconduct of the district attorney.

The victim, Phillip G. Waterman, rendered the following testimony: About 9 p.m. on December 1, 1967, he arrived at the Biltmore Hotel in Palm Springs to spend the weekend; after checking in, he visited the bar where he enjoyed drinks and dinner with the hotel owner; following dinner,

he continued drinking with the hotel owner; shortly after midnight, he went over to the table where the defendant and another girl, who gave the name "Linda," were seated; he had originally observed the girls in the bar about two hours before he approached the table; the hotel owner had told him that the girls were a couple of "hookers"; his purpose in visiting the table was to enter into a contract for prostitution; after buying a drink for the girls, he was solicited for an act of prostitution by "Linda"; she mentioned a price of $100; he replied that he did not have that much money; he then propositioned the defendant, offering her $25; she countered with an offer of $100; he only had $50 in his wallet at the time; when the bar closed at 2 a.m., he and the defendant went to his hotel room; before leaving the bar, he told Linda where his room was; about 25 minutes later, she knocked on the door; she wanted him to hurry up so she could take the defendant home; he told her that he would see the defendant home; Linda left and thereafter two acts of intercourse ensued; around 3:30 a.m. he drove defendant home in his car; she directed him to a house in a Palm Springs tract area; when he offered to pay her $25 for her services, she objected and asked for more money; suddenly, she reached for the keys in the ignition and began honking the horn of his car; three men came out of the house; he was later able to identify one of the men from a photograph as Weldon Lee Hathcock[1] [a friend of the defendant]; Hathcock was carrying an automatic rifle; Hathcock opened the car door, told Waterman to get out, and dragged him 15-20 feet from the car; Hathcock and the other two men proceeded to beat him in the chest, stomach, and around the face with their fists and with the butt of the gun; he did not see the defendant after the men approached the car; following the beating, he was ordered back into the car; he sat on the passenger side; Hathcock got into the driver's seat and one of the men sat behind him with a pistol pointed at the base of his skull; Hathcock drove to an open desert area 10-15 minutes away; Waterman was told to get out of the car and start walking; after he had gone 50 yards, he heard a car start; the car started back towards him and he hid in the desert until it passed; afterwards, he saw some lights in the distance and found his way to a service station where he called the police; he made a report to the police and was then taken to the hospital; after receiving medical treatment he was driven around Palm Springs by the police in an attempt to locate his car and the residence where the assault occurred; they found his car near a local radio station shortly after daylight; a set of keys was found in the roadway in front of his car; a corner portion of a $20 bill was found inside the car on the carpeting; his empty wallet was found on the dashboard; he was then driven by the

---

[1]Hathcock was charged in the information with being a co-conspirator; however, he was not tried with the defendant, nor was he a witness.

authorities to various housing tracts; they located the house on San Gabriel Circle where the assault had occurred, being some three miles from where the car was discovered; he could not remember anyone actually taking his money from him; he did not know what became of his wallet when he was under attack; he had money with him in his wallet when he was assaulted, and it was gone the next day; he had not paid the defendant any money prior to the beating.

The defendant rendered the following testimony in her own defense: On December 1, 1967, she was staying with Darlene Southerland [Linda] at the San Gabriel Circle residence owned by Darlene's father; she and Darlene were the only ones living in the house; she knew Weldon Hathcock, but he left Palm Springs five (5) days before the crime; when Hathcock came to Palm Springs, he frequently stayed at the same house; she and Darlene visited the Salton Sea on December 1, 1967; when they returned, she and Darlene went to the Biltmore about 9:45 p.m.; no one was in the San Gabriel Circle residence when they left; Darlene drove to the Biltmore; Waterman first approached them about 10:30 p.m. when they were still having their first drink; he asked to sit down and she agreed that he could; he introduced himself; she could not recall the name he used, but it was not Phillip; Waterman bought several drinks for them through the course of the evening; Waterman was "smashed" and she felt "a little bit tight"; Waterman initiated the conversation about an act of prostitution; he first propositioned Darlene, but when she quoted a $100 fee, the two reached an impasse; he then asked her how much she charged and she replied, "$100"; Waterman said that that was too high, and she said, "Well, that's the price, and I would rather not talk about it. If you are interested, fine, if not . . . just forget it"; she had seven drinks during the course of the evening; Waterman continued talking to her about going to his room; he asked her again if she would reduce her price and she said, "No"; finally, about a half-hour before closing time, Waterman said he would pay $100; before going to his room, she asked Darlene if she would wait and give her a ride home; she and Waterman went to his room; he started to undress but she demanded her money first; when the money was not forthcoming, she picked up her purse and started to leave but he grabbed her, slapped her face, and ordered her to take off her clothes; when she refused, he slapped her again; he then yanked off her underclothing and commenced an act of sexual intercourse; somewhat later Darlene knocked on the door and Waterman answered it; he asked Darlene if she wanted a drink but she declined; Darlene asked her if she was ready to leave and she replied that she was; Waterman told Darlene he was not finished and that he would take her home and Darlene left; they engaged in more sexual activity for an hour; he never paid her at that time or later; Waterman was in a drunken

condition; en route to Darlene's father's home, he failed to follow directions; the car was weaving back and forth on the roadway; once, he stopped the car, started to get aggressive, and hit her again; she was finally successful in directing him to the San Gabriel Circle residence where she was staying; when they arrived, he put his arm around her and insisted he was going to kiss her goodnight; she protested; the motor was still running; she grabbed for the keys in order to turn the engine off; the horn blew; she did not know whether she or Waterman pressed it; suddenly four men appeared in front of the car; she did not recognize any of them; Weldon Hathcock was not one of them; the four men told her to "get the hell out of the car"; she leaped out, ran, unlocked the door of the house, went inside, and relocked the door behind her; she changed clothes and left for Fresno; she never made an agreement with anyone before she went to the Biltmore to rob anyone; she described Hathcock as being 5 feet 6 or 7 inches tall, and stated he had tattooes on his chest.

In rebuttal, Waterman testified there appeared to be three persons who came to the car after defendant honked the horn; one of the three was short in stature; the short one had no shirt on and had a tattoo on his chest; he denied having slapped or having physically abused the defendant.

Defendant initially maintains that there is an inconsistency in the jury verdicts of not guilty of conspiracy and guilty of attempted robbery. ▇ While it is well settled that inconsistent verdicts cannot be allowed to stand, it is also fundamental that verdicts are not inconsistent unless they are rendered upon charges wherein the elements of the offenses alleged are identical. (*People* v. *Doxie,* 34 Cal.App.2d 511, 512-513 [93 P.2d 1068]; *People* v. *Hight,* 94 Cal.App.2d 100, 107 [210 P.2d 270].) ▇ Section 954 of the Penal Code provides that different offenses arising out of the same circumstances may be charged, and that "An acquittal of one or more counts shall not be deemed an acquittal of any other count." Each count in a multiple count information stands on its own merit and the disposition of one count therein has no effect on the other counts." (*People* v. *Amick,* 20 Cal.2d 247, 252 [125 P.2d 25]; *People* v. *Gant,* 252 Cal.App.2d 101, 119 [60 Cal.Rptr. 154].)

The defendant was convicted of attempted robbery. ▇ The elements necessary to sustain a conviction of conspiracy to commit robbery are not identical with those involved in an attempted robbery. A conspiracy requires proof of some type of criminal agreement, which is not required in either robbery or attempted robbery. ▇ "One may aid or abet in the commission of a crime without having previously entered into a conspiracy to commit it." (*People* v. *Durham,* 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Madison,* 242 Cal.App.2d 820, 825 [51 Cal.Rptr.

851].) ■ The jury could have reasonably concluded that there was no agreement to forcibly take Waterman's money as charged in the information, and that the act of prostitution was not committed in furtherance thereof and, therefore, no conspiracy, but yet have determined that there was an attempted robbery in view of the evidence that Waterman was not willing to pay more than $25 for her services and that defendant honked the horn and grabbed Waterman's keys knowing the men were in the house and would assist her in collecting the full amount allegedly due, but were unsuccessful in finding any money on Waterman. Consequently, the verdict of not guilty on the conspiracy charge is not inconsistent with the guilty verdict on the attempted robbery charge.

Moreover, the same argument advanced by defendant has been made before. In *People* v. *Jones,* 274 Cal.App.2d 614, 621 [79 Cal.Rptr. 251], the court rejected defendant's contention "that the jury should have found defendant guilty of attempted robbery since he was an aider or abettor if guilty at all, unless they found him also guilty of conspiracy." (See also *People* v. *Lyons,* 50 Cal.2d 245, 260 [324 P.2d 556].)

Defendant next contends that the court erred in instructing the jury on the crime of attempted robbery over her objection. In support of her argument, she maintains that the facts reflect that there was either a conspiracy or not a conspiracy, and no possible lesser offense; consequently, her counsel was misled, in that had he known that the prosecution sought a conviction for attempted robbery, he could then have cross-examined on material matters relative to the lesser offense. ■ However, the record indicates that defense counsel was not misled. Waterman was cross-examined extensively on the issue as to whether any money was actually taken from him. His testimony was indecisive and conflicting. There is a serious question whether he had any money in his wallet at the time of the crime or whether he had spent it all on liquor. This was a material issue raised by the evidence, and the court was required to instruct on it. (*People* v. *Hood,* 1 Cal.3d 444, 450 [82 Cal.Rptr. 618, 462 P.2d 370].)

■ An attempt to commit robbery is for all intents and purposes treated as a lesser included offense in the crime of robbery; where there is evidence which would absolve the defendant from guilt of the greater offense, but would support a finding of guilt of the lesser offense, an instruction on the lesser offense is mandatory and must be given *sua sponte.* (*People* v. *Crary,* 265 Cal.App.2d 534, 540 [71 Cal.Rptr. 457].)

Defendant also asserts that it was incumbent on the trial court to instruct on the lesser included offenses of assault with a deadly weapon, a felony, and simple assault, a misdemeanor.

■ Generally, in a criminal case, the trial court must instruct the jury on the general principles of law *raised by the evidence,* even though not requested to do so, but need not instruct on its own motion on specific points developed at the trial; general principles of law governing the case are those principles of law commonly or clearly and openly connected with the facts of the case before the court. (*People* v. *Hood, supra,* 1 Cal.3d 444, 449-450.)

*Hood, supra,* involved a prosecution for assault with a deadly weapon on a police officer. At trial, defendant offered evidence to the effect that the officer had exceeded the scope of his authority. The court held that, from this evidence, the jury could have found defendant guilty of the lesser included offense of assault with a deadly weapon, and that the issue was "closely and openly connected with the facts" (*ibid.,* at p. 450), making it incumbent upon the trial court to offer the instruction on assault with a deadly weapon on its own motion. ■ In the case before us, the evidence of assault and assault with a deadly weapon was insignificant, consisting only of the testimony of Waterman in his narrative of the events of the evening. It was not, therefore, an issue raised by the evidence and was not closely or openly connected with the facts before the court. ■ The trial court is not charged with the responsibility of discovering possible theories which, in the abstract, would support a finding of a lesser included offense (*People* v. *Wade,* 53 Cal.2d 322, 335 [1 Cal.Rptr. 683, 348 P.2d 116]), especially in view of defendant's denial of any complicity in the crime. (See *People* v. *Morrison,* 228 Cal.App.2d 707, 712 [39 Cal.Rptr. 874].) ■ There was no error in the failure of the court to instruct on its own motion on assault and assault with a deadly weapon.

It then becomes necessary to determine whether the evidence is sufficient to support the conviction of attempted robbery. ■ In support of her argument as to the insufficiency of the evidence, the defendant attacks Waterman's credibility, but the credibility of the witnesses is for the trial court's determination. (*People* v. *Lyons,* 47 Cal.2d 311, 320 [303 P.2d 329].) ■ Similarly, the effect of a witness' intoxication on his testimony, like any other factual matter, is a question for the consideration of the jury rather than the appellate court. (*People* v. *Jackson,* 88 Cal.App.2d 747, 751 [199 P.2d 322].)

■ Actually, there was some evidence tending to sustain a robbery conviction as well as sufficient evidence to establish an attempt. It could reasonably be inferred that the defendant grabbed the victim's keys and honked the horn with knowledge that Hathcock and the other two men were inside the residence, and with the intent to enlist their services in

robbing Waterman, thus making the defendant an aider and abettor. This evidence would have been sufficient to support a conviction of robbery.

However, in view of Waterman's testimony that he was not certain that he had any money in his wallet, did not remember anyone taking money from him, and did not know what became of his wallet, the jury properly convicted defendant of attempted robbery.

Finally, defendant maintains that the prosecutor was guilty of prejudicial misconduct in his argument to the jury. The alleged misconduct consisted of reading a portion of the instructions to the jury during final argument, lecturing the jury on the applicable law, and stating a personal belief to the effect that the prosecution had proved a fact or rendered an opinion as to the guilt of the defendant.

In his argument, the district attorney did read from portions of the instructions. Defense counsel objected to the partial reading of the instructions. The court stated that the prosecutor had a right to comment on the law to the extent that it would assist him in arguing the facts and the applicability of the facts to the law. A further reading of the instructions by the prosecutor resulted in additional objections. The court finally sustained the objection and stated, ". . . a court abuses its discretion if it permits counsel to read instructions. . . ."

■ While the practice of permitting attorneys during argument to read portions of the proposed instructions to the jury is to be discouraged, the practice is well within the discretion of the court. (*People* v. *Conley,* 134 Cal.App.2d 580, 582 [285 P.2d 693].) No abuse of discretion has been shown, nor does it appear that any prejudice resulted from the reading of the instructions by the prosecutor. Assuming, arguendo, that the reading of the instructions constituted misconduct, no federal constitutional right was violated, and appellant has failed to show that any prejudice resulted. (See *People* v. *Watson,* 46 Cal.2d 818, 835-836 [299 P.2d 243].)

■ Furthermore, there is ample authority that it is permissible for counsel to state what the law is and apply the law to the facts of the case, providing his statement in the premises is correct. (*People* v. *Jones,* 205 Cal.App.2d 460, 467 [23 Cal.Rptr. 418]; *People* v. *Dykes,* 107 Cal.App. 107, 118 [290 P. 102].) ■ A prosecutor is not guilty of misconduct merely because in his argument of the law before a jury he is wrong as to the law; to constitute misconduct, he must urge an erroneous proposition of law in bad faith. (*People* v. *Jones, supra*; *People* v. *Gould,* 170 Cal.App.2d 489, 492 [338 P.2d 938].) Defendant does not argue that the prosecutor was incorrect in his statements of law.

■ The district attorney's statement to the effect "that under the law,

various facts, elements of the offenses, and ultimate guilt of the defendant have been established by the evidence" was not improper. A prosecutor has the right to state his views, his belief and conviction as to what the evidence establishes, and to urge that the evidence convinces his mind or is conclusive of the guilt of the defendant. (*People* v. *Head,* 108 Cal.App.2d 734, 736-738 [239 P.2d 506].) ██ It is within the domain of legitimate argument for a prosecutor to state his deductions or conclusions drawn from the evidence and to relate to the jury that, in his opinion, the evidence shows that the defendant is guilty of the crimes charged, unless his statements are not based upon legitimate evidence or are to the effect that he has personal knowledge of the defendant's guilt. (*People* v. *Dillinger,* 268 Cal.App.2d 140, 144 [73 Cal.Rptr. 720].) Cases holding that a prosecutor's statement that he believes the defendant to be guilty to be improper have done so on the basis that the declaration was tantamount to a testimonial assertion that the prosecutor believed the defendant guilty from the inception of the prosecution; the authorities have condemned any such assertion because it implies the district attorney possesses proof of guilt beyond that which the jury has examined. (*People* v. *Dillinger, supra.*)

██ In the case under review, the prosecutor who delivered the final argument was not the deputy district attorney who commenced the case. The original prosecutor had been excused from continuing with the presentation of the case during the course of trial by reason of a death in his family. The substitute district attorney was unfamiliar with most of the evidence and did not undertake representation on behalf of the People until after Waterman's testimony had been concluded. His substitution was consented to by defense counsel. Consequently, the jury was well aware that the substitute deputy district attorney was not thoroughly familiar with all of the evidence introduced prior to his induction into the case. There is absolutely no evidence that the prosecutor acted in bad faith or that he overstepped the bounds of legitimate argument.

The judgment of conviction is affirmed; the purported appeal from the order denying motion for a new trial is dismissed.

Gardner, J., and Tamura, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 29, 1970. Peters, J., was of the opinion that the petition should be granted.