Filed 9/13/21  P. v. Wyatt CA2/4
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | No. B301993 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA473854) |
| v. | |
| KEITH ROBERT WYATT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David V. Herriford, Judge.  Affirmed.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Kathy S. Pomerantz, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Keith Robert Wyatt was convicted by jury of two counts of criminal threats (Pen. Code, § 422, subd. (a); counts 1 & 2)[1] with personal use of a knife (§ 12022, subd. (b)(1)) and one count of vandalism over $400 (§ 594, subd. (a); count 4). He was acquitted of one count of assault with a deadly weapon (§ 245, subd. (a)(1); count 3). He admitted that he had suffered two prior "strike convictions" (§§ 667, subds. (b)-(j), 1170.12). The court struck the two prior strike convictions, and sentenced appellant to four years, eight months in state prison.

On appeal, Wyatt contends: (1) the evidence is insufficient to support the enhancement findings in counts 1 and 2 that he used a deadly or dangerous weapon, and (2) the trial court erred in instructing the jury that the damage caused by separate acts of vandalism could be aggregated to reach the felony threshold exceeding $400 (he requests this court to reverse the conviction of felony vandalism and reduce it to a misdemeanor (§ 594 subd. (b)(1))). We are not persuaded and affirm the judgment.

## BACKGROUND

Linda Thompson lived in unit 204 in an apartment complex on West 78th Street in Los Angeles. Around 12:00 p.m. on December 20, 2018, she was in her apartment with the front door open and the metal

---

[1] All further references are to the Penal Code.

screen door closed and locked. Thompson noticed her neighbor, appellant, run past. She heard him say "Oop" as he tampered with the security camera outside her door. Appellant turned around, pulled out a knife, and kicked the metal screen door several times while repeating "I'm gonna to [*sic*] kill you."

Thompson had a heart condition and retreated from the door to her bedroom to take an extra heart pill as she feared for her life. Thompson called the manager of the apartment complex, Olvyn Corea, after which she made a 911 call. The recording of Thompson's 911 call was played for the jury. Thompson told the operator that her building manager had told her to call the police because her neighbor, appellant, was taking down security cameras and had threatened her.

Corea received Thompson's call around 12:00 p.m. on December 20, and arrived 15 minutes later. Thompson was in her kitchen shaking and crying. As he exited and locked Thompson's unit, Corea noticed an apartment door open on the third floor. Corea went to the apartment and told the resident to close and lock the front door. As Corea exited the apartment, he saw appellant open a knife and remove a camera located in front of the unit.

Appellant was 10-to-12-feet away, and Corea started walking backwards once he noticed the knife. Appellant held the knife at chest level with the blade facing toward Corea, said "I kill you, motherfucker," and advanced toward Corea.[2] Believing appellant was

---

[2] According to a stipulation entered into evidence, at a prior hearing, Corea testified that he was 20 feet from appellant when appellant pointed the

3

serious, Corea backed up and called 911. Ultimately, appellant descended down the stairs toward the parking lot.

Around 12:15 p.m., police arrived and observed appellant walk to the parking lot of the apartment complex. They later found him seated in a car there. A black folding knife was lying on the driver's side floorboard. The knife had a four inch blade with residue of stucco on it.

Eleven video clips from security cameras were shown to the jury. In one of the video clips, appellant could be seen holding a pocketknife in his hand. In all video clips, appellant either moved or pried a camera off its mount (police had found four cameras still attached by wires but removed from their mounts). Appellant had also damaged other security cameras on the previous day (December 19).

In all, 11 cameras were damaged and 5 had to be completely replaced. Ana Ward, a director of the company that managed the apartment complex, testified that she had hired an outside contractor to repair the cameras. A December 21, 2018 invoice showed a total repair cost of $2,016.38. Besides miscellaneous items, the items listed included five new cameras at a cost of $135 each for installation.[3] There were also 10 "video balun coax" (no explanation given) that were needed

knife and approximately at the same distance when appellant threatened to kill him.

[3] Although Corea did not recall making the statement, a video of a conversation between the police and Corea was played for the jury in which Corea said that it would cost about $100 to repair each of the damaged cameras.

4

to complete repairs at $25 each. There was no breakdown indicating which cameras were damaged on December 19 and on December 20.

## DISCUSSION

I.  *Sufficiency of the Evidence*

Appellant contends that there was insufficient evidence to support the finding under section 12022, subdivision (b)(1), that he used a knife as a deadly or dangerous weapon in making criminal threats against Thompson and Corea. We disagree.

We apply well-settled rules of review. "We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction." (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) When considering a challenge to the sufficiency of evidence supporting a conviction, the court must review the whole record "'in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" (*People v. Johnson* (2015) 60 Cal.4th 966, 988.)

Section 12022, subdivision (b)(1) states: "A person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense." "Cases discussing the definition of a deadly weapon routinely rely on other cases dealing with different statutes." (*People v. Page* (2004) 123

Cal.App.4th 1466, 1472.) Although a knife is not an inherently dangerous weapon, it may "qualify as a deadly weapon based on how it was used, [that is,] the defendant must have used the object in a manner not only capable of producing but also *likely to produce* death or great bodily injury." (*In re B.M.* (2018) 6 Cal.5th 528, 530.)

A. *Count 1* (*Thompson*)

Appellant contends that the locked metal screen door of Thompson's apartment prevented him from using the knife in a manner capable of causing and likely to cause death or great bodily injury to Thompson. He is mistaken.

Appellant brandished the knife, threatened to kill Thompson several times, and repeatedly kicked the locked screen door while she stood visible at the other side. There is no doubt how appellant perceived the knife as used: capable of helping him gain entry and of stabbing Thompson to death. There is also no doubt how Thompson perceived the knife as used: she feared for her life, and, believing that appellant could enter and stab her, she retreated to the back end of the apartment and took a heart pill.

The mere fact that the screen door between appellant and Thompson was locked does not defeat the reasonable inference that the knife, as used by appellant, was capable of and likely to produce great bodily injury to Thompson. When making a determination whether an object that is not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which

6

it is used, and all other facts relevant to the issue. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1029.) Here, the knife had a four-inch blade, and appellant used it not simply to threaten to kill Thompson, but also, immediately prior, to remove security cameras affixed to the hallways of the apartment building. The jury could reasonably infer that by the nature of appellant's use of the knife as a whole—to remove mounted security cameras, to raise it against Thompson while kicking Thompson's door and threating to kill her—the knife was capable of and likely to produce great bodily injury on Thompson. (See *In re B.M.*, *supra*, 6 Cal.5th at p. 537 ["an aggressor should not receive the benefit of a potential victim fortuitously taking a defensive measure or being removed from harm's way once an assault is already underway"].)

### B. *Count 2* (*Corea*)

As to his use of the knife against Corea, appellant contends that the knife was not capable of inflicting and likely to inflict great bodily injury, because the display of the knife occurred when appellant was 20 feet away, he was using it to remove security cameras, and he simply had it in his hand when he threatened to kill Corea.

Appellant minimizes and misconstrues the evidence. Drawing all inferences in favor of the judgment, the evidence showed that appellant and Corea were in the apartment building walkway on the third floor. Corea observed appellant prying loose a security camera with the knife. Appellant then advanced toward Corea. Holding the knife with the blade facing Corea, appellant threatened to kill him. At trial, Corea

7

testified that appellant was 10-to-12-feet away.  It is true that the parties stipulated that Corea had testified at a prior hearing that appellant was 20 feet away, but the jury was free to accept his trial testimony and reject the inconsistent version.  Regardless, whether 12 or 20 feet separated them, the distance was sufficiently small for the jury to infer that had Corea not taken evasive action (retreating) and called 911, appellant was capable of using the knife to kill or inflict great bodily injury on Corea.  (See *In re Raymundo M.* (2020) 52 Cal.App.5th 78, 89 [victim ran when defendant brandished knife from 10-to-12-feet away; "[t]he 10- to 12-foot distance at issue [was] within a range the trier of fact could reasonably conclude posed a danger of imminent bodily harm to [victim], absent evasive action"].

To the extent appellant relies on his acquittal of count 3 to contend that his use of the knife was solely to dismount the security cameras, his reliance is misplaced.  "'Each count in a multiple count information stands on its own merit and disposition of one count therein has no effect on the other counts.'" (*People v. Calpito* (1970) 9 Cal.App.3d 212, 219.)

II.   *Alleged Instructional Error Regarding Aggregating Acts of Vandalism Over Two-Day Period*

Appellant contends that the jury was improperly instructed on count 4 that it could aggregate the damages from the vandalism of the 11 security cameras over a two-day period to determine whether total

8

damages exceeded $400 under section 594, subdivisions (a) and (b). We disagree.

Section 594, subdivision (a), provides in relevant part: "[e]very person who maliciously ['damages'] any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism." Section 594, subdivision (b)(1) provides that "[i]f the amount of . . . damage . . . is four hundred dollars ($400) or more, vandalism is punishable by imprisonment pursuant to subdivision (h) of Section 1170." However, under section 594, subdivision (b)(2)(A), "[i]f the amount of . . . damage . . . is less than four hundred dollars ($400), vandalism is punishable by imprisonment in a county jail not exceeding one year, or by a fine of not more than one thousand dollars ($1,000), or by both that fine and imprisonment."

Here, pursuant to CALCRIM No. 2901, the standard instruction on determining the amount of damage caused by vandalism, the trial court added the following language: "Damage resulting from multiple acts of vandalism may be aggregated if the acts were part of a single general impulse, intention or plan." This language was based on this court's decision in *People v. Carrasco* (2012) 209 Cal.App.4th 715 (*Carrasco*), in which we approved substantially similar instructional language.[4] In *Carrasco*, we relied on *People v. Bailey* (1961) 55 Cal.2d

---

[4] "'If you find the defendant committed more than one act of vandalism against the same victim or same household, under one general impulse and one plan and the damage for each act is less than $400, but aggregating more than that sum, you may find the total damage to be in excess of $400.'" (*Carrasco, supra*, 209 Cal.App.4th at pp. 721–722.)

514 (*Bailey*) and *In re Arthur V.* (2008) 166 Cal.App.4th 61, and concluded under these authorities "that damages from separate acts of vandalism may be aggregated . . . if the acts were committed under one general impulse and plan." (209 Cal.App.4th at p. 723; see *Bailey, supra*, 55 Cal.2d at p. 519 [defendant could be convicted of a single count of grand theft upon aggregation of lesser offenses so long as they were "all motivated by one intention, one general impulse, and one plan"]; *In re Arthur V., supra*, 166 Cal.App.4th at p. 66 [multiple instances of misdemeanor vandalism can be aggregated to form a single felony, unless "'the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan'"].)

Appellant contends that the evidence did not support aggregating the damages from the acts of vandalism at the apartment house under these authorities. We disagree.

Appellant vandalized 11 security cameras at the same apartment complex between December 19 and December 20, 2018. It takes little imagination to infer that each act of vandalism, committed within a relatively brief time frame, shared the identical intention, impulse and plan: to disable the surveillance cameras at the apartment complex. Given that the invoice for repair of the 11 damaged cameras totaled $2,016.38, the jury was entitled to use that aggregated amount in concluding that the amount of damages exceeded $400.

Appellant requests that we re-examine *Carrasco* and the aggregation rule in light of the discussion of *Bailey* in *People v. Whitmer*

10

(2014) 59 Cal.4th 733 (*Whitmer*). But *Whitmer* is inapposite. In *Whitmer*, the defendant was a manager of a motorcycle dealership. He arranged the fraudulent sale of 20 motorcycles, motorized dirt bikes, and similar recreational vehicles. The jury convicted him of 20 counts of grand theft for 20 separate fraudulent sales. (*Whitmer*, *supra*, 59 Cal.4th at p. 735.) On appeal, the defendant relied upon *Bailey* to contend that he could only be convicted of one count of grand theft. The Supreme Court held the defendant was not able to use the *Bailey* doctrine to be prosecuted for a single count of felony grand theft. (*Id.* at p. 739.) The court determined that a defendant may be convicted of multiple counts of grand theft, even if the acts were committed pursuant to a single overarching scheme, and was not entitled to a "felony discount" by using the *Bailey* rule. (*Ibid.*) The court explained that the "*Bailey* rule must be interpreted in light of its facts," and "we are disapproving some post-*Bailey* Court of Appeal decisions. But those cases misinterpreted *Bailey* and overlooked the fact that it cited and distinguished, but did not overrule, earlier cases, including some from this court, that support finding multiple grand thefts in cases like this. We are merely reaffirming those earlier cases." (*Id.* at pp. 740-741.)

Thus, *Whitmer* did not disapprove the use of the aggregation rule of *Bailey* by the prosecution to establish whether multiple acts of theft (or vandalism) may be aggregated to form a single count. It simply denied the defendant the right to obtain a "felony discount" by aggregating separate grand thefts pursuant to a single scheme. Therefore, we see no reason to reexamine our decision in *Carrasco*.

11

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                  WILLHITE, J.

We concur:


MANELLA, P. J.


CURREY, J.

12